No. 23-1165

---

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

LuzMaria Arroyo,

                          Plaintiff-Appellant,

v.

Volvo Group North America, LLC,

                          Defendant-Appellee.

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 12-C-06859
The Honorable Judge Robert M. Dow, Jr.

===

BRIEF AND SUPPLEMENTAL SHORT APPENDIX OF
DEFENDANT-APPELLEE, VOLVO GROUP NORTH AMERICA, LLC

===

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

William J. McMahon, IV
One West 4th Street, Suite 850
Winston-Salem, NC 27101
(336) 721-1001
bmcmahon@constangy.com

Laura A. Balson
300 S. Wacker Dr., Ste. 1050
Chicago, IL 60606
(773) 661-4708
lbalson@constangy.com

Attorneys for the Defendant-Appellee,
Volvo Group North America, LLC

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-1165</u>

Short Caption: <u>LuzMaria Arroyo v. Volvo Group North America, LLC</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Volvo Group North America d/b/a Volvo Parts North America</u>

_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Constangy, Brooks, Smith & Prophete, LLP</u>

_____

(3)    If the party, amicus or intervenor is a corporation:

    i)       Identify all its parent corporations, if any; and

           <u>See attached.</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

           <u>See 3(i), above.</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

_____

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

_____

Attorney's Signature: <u>/s/ William J. McMahon, IV</u>      Date: <u>3/24/2023</u>

Attorney's Printed Name:  <u>William J. McMahon, IV</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: <u>100 N. Cherry St., Ste. 300</u>

       <u>Winston-Salem, NC 27101</u>

Phone Number: <u>336-721-6860</u>      Fax Number:  <u>336-748-9112</u>

E-Mail Address: <u>bmcmahon@constangy.com</u>

rev. 12/19 AK

3(i) Identify all its parent corporations, if any; and

Volvo Group North America is a wholly owned subsidiary of Mack Trucks, Inc., which in turn is a wholly owned subsidiary of VNA Holding, Inc. which in turn is a wholly owned subsidiary of A.B. Volvo, which is publicly traded.

# Table of Contents

Disclosure Statement...................................................................................ii

Table of Contents........................................................................................iv

Table of Authorities .....................................................................................v

Jurisdictional Statement ..............................................................................1

Statement of Issue Presented for Review ...................................................2

Statement of the Case .................................................................................2

    I. Procedural History..............................................................................2

        A.    Summary of the Procedural History............................................2

        B.    Arroyo's Complaint and Proceedings Before the First Trial ......3

        C.    First Jury Trial and Post-Trial Motions.......................................3

        D.    Second Jury Trial and Post-Trial Motions ..................................5

    II. Key Facts ...........................................................................................6

        A.    Arroyo Begins Employment at Volvo and Is Granted Multiple Leaves of Absence. .......................................................................6

        B.    Arroyo Repeatedly Violates Volvo's Attendance Policy. .............7

        C.    Volvo Repeatedly Accommodates Arroyo's PTSD Treatment.....9

        D.    Volvo Uses Progressive Discipline Under the Attendance Policy To Address Arroyo's Ongoing Violations. .................................10

        E.    Ongoing Attendance Policy Violations Cause Termination of Arroyo's Employment........................................................................13

Summary of the Argument........................................................................13

Argument ..................................................................................................15

        A.    The Standard of Review is Abuse of Discretion. .......................15

        B.    Arroyo Fails to Assert an Articulable Basis for Relief on Appeal. ...........15

        C.    The District Court Did Not Abuse Its Discretion In Denying Arroyo's Rule 59 (e) Motion Where There Was No Manifest Error Or Newly Discovered Evidence................................................17

        D.    Any Purported Errors Identified by Arroyo in the Second Trial Are Irrelevant to this Appeal. .....................................................27

Conclusion ................................................................................................30

Certificate of Compliance with F.R.A.P. Rule 32(A)(7), F.R.A.P. 32(G) and Cr 32(C) ...............................................................................................32

Certificate of Service.................................................................................33

Table of Contents to Supplemental Short Appendix.................................34

# Table of Authorities

Page(s)

Cases

*Am. Nat. Bank & Tr. Co. of Chicago v. Reg'l Transp. Auth.*,
   125 F.3d 420 (7th Cir. 1997)...................................................................... 23

*Anderson v. Hardman*,
   241 F.3d 544 (7th Cir.2001)...................................................................... 16

*Bombard v. Fort Wayne Newspapers, Inc.*,
   92 F.3d 560 (7th Cir. 1996)................................................................ 19, 20

*Carroll v. Delaware River Port Auth.*,
   89 F. Supp. 3d 628 (D.N.J. 2015) ............................................................ 29

*Cincinnati Life Ins. Co. v. Beyrer*,
   722 F.3d 939 (7th Cir. 2013)..................................................................... 15

*Cont'l Cas. Co. v. Howard*,
   775 F.2d 876 (7th Cir. 1985)........................................................ 24, 25, 26

*Dorin v. Equitable Life Assur. Soc. of U. S.*,
   382 F.2d 73 (7th Cir. 1967)....................................................................... 23

*Dossett v. First State Bank*,
   399 F.3d 940 (8th Cir. 2005)..................................................................... 24

*Dresser Indus., Inc., Waukesha Engine Div. v. Gradall Co.*,
   965 F.2d 1442 (7th Cir. 1992)................................................................... 24

*Ferrell v. Ezpawn Okla., Inc.*,
   2019 WL 3207797 (W.D. Okla. July 16, 2019)......................................... 29

*Fogle v. Ispat Inland, Inc.*,
   32 F. App'x 155 (7th Cir. 2002) ............................................................... 20

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015)..................................................................... 25

*Gonzalez-Koeneke v. West*,
   791 F.3d 801 (7th Cir. 2015)..................................................................... 15

*H.A.L. NY Holdings, LLC v. Guinan,*
 958 F.3d 627 (7th Cir. 2020) ................................................................. 17

*Holmes v. Dep't of Justice,*
 498 F. App'x 993 (Fed. Cir. 2013) ......................................................... 29

*Kapelanski v. Johnson,*
 390 F.3d 525 (7th Cir. 2004) ........................................................... 16, 23

*King v. Ford Motor Co.,*
 872 F.3d 833 (7th Cir. 2017) ................................................................. 21

*Kobs v. Arrow Serv. Bureau, Inc.,*
 134 F.3d 893 (7th Cir. 1998) ................................................................. 23

*Landfair v. J.B. Hunt Transport, Inc.,*
 2008 WL 538674 (7th Cir. 2008) .......................................................... 17

*Leistiko v. Secretary of the Army,*
 922 F.Supp. 66 (N.D.Ohio 1996) .......................................................... 29

*McBride v. U.S. Postal Service,*
 78 M.S.P.R. 411, 414-15 (1998) ............................................................ 29

*Medcom Holding Co. v. Baxter Travenol Lab'ys, Inc.,*
 106 F.3d 1388 (7th Cir. 1997) ............................................................... 22

*Mejia v. Cook Cnty.,*
 650 F.3d 631 (7th Cir. 2011) ................................................................. 25

*Nguyen v. Illinois Dept. of Central Management Services,*
 2003 WL 1796008 (7th Cir. 2003) ........................................................ 17

*Ortiz v. Werner Enters., Inc.,*
 834 F.3d 760 (7th Cir. 2016) ................................................................. 21

*Oto v. Metro. Life Ins. Co.,*
 224 F.3d 601 (7th Cir. 2000) ................................................................. 18

*Parker v. Brooks Life Sci., Inc.,*
 39 F.4th 931 (7th Cir. 2022) ................................................................. 21

*Rowlands v. United Parcel Serv.–Fort Wayne,*
 901 F.3d 792 (7th Cir. 2018) ................................................................. 21

*Smith v. Rosebud Farm, Inc.,*
 898 F.3d 747 (7th Cir. 2018) ................................................................. 25

*Townsend v. Alexian Bros. Med. Ctr.*,
   589 F. App'x 338 (7th Cir. 2015) ........................................... 17

*United States v. Collins*,
   604 F.3d 481 (7th Cir. 2010) ................................................. 28

*Voelker v. Porsche Cars North America, Inc.*,
   353 F.3d 516 (7th Cir. 2003) ................................................ 16

*Whitehead v. Bond*,
   680 F.3d 919 (7th Cir. 2012) ................................................ 23

Statutes

28 U.S.C. § 1331 .......................................................................... 1
28 U.S.C. § 1367 .......................................................................... 1
28 U.S.C. § 1391(b) ..................................................................... 1
38 U.S.C. § 4301(a)(3) ............................................................... 29
38 U.S.C.A. § 4301 ...................................................................... 1
42 U.S.C. § 1981a(a)(2) ............................................................. 22
42 U.S.C. § 1981a(b)(2) ............................................................. 22
42 U.S.C.A. § 12101 ..................................................................... 1

**Jurisdictional Statement**

Arroyo's Jurisdictional Statement is incorrect and includes information that is not relevant to jurisdiction.

Jurisdiction was proper in the District Court pursuant to 28 U.S.C. § 1331 as to each of Arroyo's claims that arose under the laws of the United States. Specifically, Arroyo sought redress for alleged violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C.A. § 4301 *et seq.*, and the Americans with Disabilities Act ("ADA") of 1990, § 2 *et seq.*, 42 U.S.C.A. § 12101 *et seq.* The District Court had supplemental jurisdiction over Arroyo's state law claim for intentional infliction of emotional distress, pursuant to 28 U.S.C. § 1367, prior to affirmation of the dismissal of the state law claim.

Venue was proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Arroyo's claims occurred in that District.

This Court has jurisdiction pursuant to Rule 4 of the Federal Rules of Appellate Procedure. Judgment was entered for Defendant-Appellee Volvo Group North America, LLC ("Volvo") on February 3, 2022, following a jury trial. Plaintiff-Appellant LuzMaria Arroyo ("Arroyo") filed a Rule 59(e) motion on February 28, 2022, which was denied on December 27, 2022. Arroyo filed her Notice of Appeal on January 24, 2023. Based on the Amended Jurisdictional Statement filed by Arroyo on July 24, 2023, Arroyo now appeals the District Court's denial of Arroyo's Rule 59 Motion to

Alter or Amend the Judgment (Doc. 351)[1] and the District Court's finding that Arroyo "failed to make a showing that the District Court's order granting a new trial was manifestly erroneous either in its factual apprehension of the case or in its application of law to those facts." (Ap. Doc. 26 at 8)[2].

## Statement of Issue Presented for Review

Did the District Court properly deny Arroyo's Motion, under Rule 59(e), seeking to alter or amend the judgment entered in favor of Volvo after the second jury trial, where no manifest error or newly discovered evidence was cited in support of Arroyo's Motion?

## Statement of the Case

### I. Procedural History

#### A.   Summary of the Procedural History

Arroyo's employment was terminated in 2011 after she repeatedly violated Volvo's attendance policy and accrued sufficient attendance points to require termination under the policy. Arroyo brought suit alleging her termination was actually due to discrimination and retaliation related to her disability, that Volvo failed to reasonably accommodate her disability, and that Volvo discriminated against Arroyo due to her status as a U.S. military servicemember. The Honorable Judge Robert M. Dow, Jr. initially granted summary judgment in Volvo's favor on all counts, Arroyo appealed, and this Court remanded the case for trial on the ADA direct method discrimination claim and the USERRA discrimination claim only. At the first

---

[1] All citations to docket entries in the district court record are referred to as "Doc."
[2] All citations to docket entries in the appellate court record are referred to as "Ap.Doc."

trial, the jury found in favor of Arroyo on both counts and Volvo brought a Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial. Judge Dow granted judgment as a matter of law on the ADA count and granted a new trial on the USERRA count. A second trial on the USERRA count ended with a jury verdict in favor of Volvo and Arroyo filed a Rule 59(e) Motion, which Judge Dow denied. This appeal follows.

**B.      Arroyo's Complaint and Proceedings Before the First Trial**

Arroyo initially filed suit against Volvo on August 27, 2012 in the Northern District of Illinois. (Doc. 1). She filed a Third Amended Complaint ("Complaint") on July 29, 2013, alleging discrimination, retaliation and failure to provide reasonable accommodations under the ADA and discrimination under USERRA, along with a state law claim for intentional infliction of emotional distress. (Doc. 48-1).

On April 30, 2014, Volvo filed a motion for summary judgment on all counts of Arroyo's Complaint. (Doc. 75). On September 30, 2014, the District Court entered an order and final judgment granting summary judgment to Volvo on all counts and awarding costs. (Doc. 88 and 89).

Arroyo filed her first Notice of Appeal with the District Court on December 1, 2014. (Doc. 100). On October 6, 2015, this Court affirmed in part and reversed in part, remanding the case for trial on the ADA direct method discrimination claim and the USERRA discrimination claim only. (SA2-18)[3].

**C.      First Jury Trial and Post-Trial Motions**

---

[3] All citations to the Short Appendix filed with Appellant's Brief are referred to as "SA".

The first jury trial was held in August 2016, pursuant to this Court's remand. During the trial, at the close of Arroyo's case in chief, over Volvo's objection, Judge Dow extended an invitation to Arroyo to reopen her case in chief in order to introduce evidence of compensatory damages under her ADA claim stemming from the termination of her employment. Arroyo declined this invitation, explaining, "I also do not believe that Plaintiff has to re-open her case at all. I believe that the kinds of compensatory damages for physical pain and suffering and garden variety emotional distress have been sufficiently set forth in Plaintiff's Case in Chief before we rested. I am satisfied that we have sufficient evidence in the record for plaintiff to argue this issue." (Doc. 227 at 28).

Following the conclusion of the first trial, on August 23, 2016, the jury rendered a verdict in favor of Arroyo on both counts, awarding her $2.6 million in compensatory damages and $5.2 million in punitive damages under the ADA count. (Doc. 162). After post-trial briefing, on July 13, 2017, Judge Dow awarded $542,284.22 for back pay, front pay, other employment-related compensation, prejudgment interest and liquidated damages under the USERRA count, reduced the jury's $2.6 million award to $300,000, vacated the jury's $5.2 million award and entered final judgment. (Doc. 176 and 177). Volvo filed its Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial, on August 10, 2017. (Doc. 183 and 184, refiled at the direction of the District Court as Doc. 192 and 205). On September 30, 2019, Judge Dow issued a Memorandum Opinion and Order granting Volvo's

motion, entering judgment as a matter of law in favor of Volvo on the ADA count and ordering a new trial on the USERRA count. (Doc. 227).

While the parties were awaiting the second trial, on November 18, 2020, Judge Dow entered two orders addressing various pre-trial issues briefed by the parties in preparation for the second trial. (Doc. 260 and 275). Arroyo then filed two separate Motions to Reconsider without any clear indication of what Arroyo wanted Judge Dow to reconsider or what legal authority supported her ability to file such motions. First, on November 27, 2020, Arroyo filed a motion asking the District Court to "reconsider its ruling and allow Arroyo the choice of accepting a remittitur to a specific reduced monetary sum or opting for a new trial on all claims with the right of the jury to deliberate on all issues on both the ADA and USERRA claims in accordance with the mandate from the Seventh Circuit Court of Appeals." (Doc. 276 at 13). Then, on June 15, 2021, Arroyo filed a nearly identical Motion to Reconsider, this time asking the District Court to "reconsider its ruling and re-set the terms for the retrial of the cause to allow plaintiff to present her claims under both the ADA and USERRA." (Doc. 297 at 15). On August 26, 2021, Judge Dow denied both motions. (Doc. 300).

**D.    Second Jury Trial and Post-Trial Motions**

A second jury trial was held on the USERAA count only and on February 3, 2022, the jury rendered a verdict in Volvo's favor and final judgment was entered. (Doc. 342). On February 28, 2022, Arroyo filed a motion under Rule 59(e) seeking to set aside the verdict from the second trial and to reinstate the verdict returned by the first jury in 2016. (Doc. 343-1). Arroyo's Rule 59(e) motion did not seek a new trial, which Judge Dow interpreted to mean that Arroyo was only seeking reinstatement of

the earlier verdict, which would only be available if the District Court vacated its earlier order granting the new trial. (SA 141-142). Accordingly, Judge Dow construed Arroyo's Rule 59(e) motion as a motion to reconsider his September 30, 2019 Order. The District Court denied Arroyo's Rule 59(e) Motion on December 27, 2022. (Doc. 351).

Arroyo filed her Notice of Appeal with the District Court on January 24, 2023. (Doc.354). After receiving an extension of time, Arroyo filed her Appellant's Brief and Short Appendix on June 29, 2023. (Ap.Doc. 20). On July 14, 2023, this Court ordered Arroyo to file an amended jurisdictional statement. (Ap.Doc. 25). On July 24, 2023, Arroyo filed her Amended Jurisdictional Statement indicating that she is appealing the District Court's denial of her Rule 59 Motion to Alter or Amend the Judgment (Doc. 351) and the District Court's finding that Arroyo "failed to make a showing that the District Court's order granting a new trial was manifestly erroneous either in its factual apprehension of the case or in its application of law to those facts." (Ap.Doc. 26 at 8).

## II. Key Facts[4]

### A. Arroyo Begins Employment at Volvo and Is Granted Multiple Leaves of Absence.

Arroyo was employed as a material handler for Volvo at its Chicago Parts Distribution Center ("Distribution Center") in Joliet, Illinois, from June 13, 2005 until she was fired on November 8, 2011. (Trial Tr. Vol. 2-A, p.80). In Arroyo's

---

[4] All citations to the trial transcript in Appellant's Brief are to the transcript from the first trial. (Appellant's Brief at 7-22). As a result, and based on the relief that Arroyo is seeking from this Court, Volvo's factual citations also come from the record of the first trial.

employment application, she stated that she was a member of the U.S. Army Reserve, and Volvo hired her with that knowledge. (*Id.* pp.82-83).

Throughout her employment, Volvo granted Arroyo leave for military activities, including military drills, training, and Yellow Ribbon events, as well for deployments from April 17, 2006 to May 7, 2007, and April 15, 2009 to August 15, 2010. (Def. Ex. 6). In 2009, while Arroyo was on leave, Volvo terminated six similarly situated material handlers per a reduction in force. (Trial Tr. Vol. 2-B, p.172-174). Volvo did not terminate Arroyo. (*Id.*). In August 2010, upon return from a deployment, Volvo offered Arroyo a voluntary severance package that had been offered to other material handlers. (*Id.* pp.163-164). Arroyo declined the offer. (*Id.*). In total, Arroyo received more than 900 days of military leave during six and a half years of employment. (Def. Ex. 6).

Arroyo's supervisor, Michael Temko, spoke to human resources and management about how to handle Arroyo's various leave requests, what rights (such as leave, travel, and rest time) were provided under USERRA, and what information Arroyo was required to provide to Volvo prior to or during requested leave time. (Trial Tr. 3-A, pp. 275-276). Temko, a former United States Army Reservist, kept track of Arroyo's military schedule and her absences. (Trial Tr. 2-A, p.83 and 137).

## B. Arroyo Repeatedly Violates Volvo's Attendance Policy.

All material handlers at the Distribution Center are subject to Volvo's attendance policy. (Trial Tr. Vol. 6-A, pp.1005-1009). Per the policy, employees receive "occurrences"—either whole or fractional— for inexcusable absences or tardiness. (*Id.*, pp. 1012-1013). For each occurrence, Volvo looks back both four weeks

and six months from the date of the most recent occurrence to see if an employee has accrued enough occurrences to warrant a step in the progressive disciplinary process. (*Id.*, pp.1013-1016). Corrective action will be taken if an employee has two occurrences within a four-week period or five occurrences within a six-month period, calculated on a rolling fiscal year. (*Id.*). Depending on how near an employee's occurrences are to one another, an employee may receive more than one disciplinary step at the same time, as the same occurrence can count for purposes of multiple disciplinary steps, given the look-back periods discussed above. (*Id.*, pp.1022-1023).

Volvo maintains attendance spreadsheets for all of its employees. (Trial Tr. Vol. 3-B, p. 415; Vol. 6-A, p.1017). Though Arroyo is the only employee for whom a *military* leave spreadsheet was maintained, she was the only Volvo employee with active-duty military obligations during the relevant time. (*Id.* pp.415-416, 421). It is undisputed that Arroyo received no occurrences under the Local Attendance Policy for days on which she took military leave. (Def. Ex. 15).

The attendance policy underwent periodic revision. (Trial Tr. Vol. 6-A, pp.1023-1024). In January 2008, the unwritten grace period that allowed employees to punch in up to two minutes after the beginning of their shifts was eliminated due to employee abuse. (*Id.*, pp.1025-1026). In 2009, Arroyo received a verbal warning for two occurrences as a result of two no call, no shows within a four-week period in 2008. (Def. Ex. 16).

On October 1, 2010, Arroyo punched in 22 minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the attendance policy. (Def. Ex.

18). On October 11, 2010, Arroyo punched in 20 minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the attendance policy. (*Id.*). On October 19, 2010, Arroyo called-in absent for work and earned one (1) occurrence under the attendance policy. (*Id.*).

On October 29, 2010, Schroeder presented Arroyo with a Corrective Action Plan ("CAP") in the form of a verbal warning—the first step in the progressive disciplinary process under the Local Attendance Policy—for the two occurrences she earned within a one-month period from October 1, 2010 to October 19, 2010. (Def. Ex. 18). On October 29, 2010, Arroyo punched in one minute after the beginning of her shift. (Def. Ex. 15).

Arroyo challenged this occurrence and any disciplinary action stemming from October 29, 2010, contending she was unaware of the change that eliminated the previous unwritten two-minute grace period rule. (Trial Tr. Vol. 5-A, pp.709-710). As a result, the occurrence and the second step in progressive discipline under the attendance policy based on her one-minute transgression on October 29 was removed. (*Id.*). On November 23, 2010, Arroyo punched in two minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the policy. (Def. Ex. 15).

### C. Volvo Repeatedly Accommodates Arroyo's PTSD Treatment.

Arroyo was treated for service-related post-traumatic stress disorder ("PTSD") in December 2010 and formally diagnosed in January 2011. (Trial Tr. Vol 2-B, p.218). She was subsequently approved for and took concurrent FMLA, and short-term disability ("STD") leave from December 23, 2010 to March 22, 2011. (Def. Ex. 15).

On April 14, 2011, Arroyo punched in ten minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the attendance policy. (Def. Ex. 15). On both May 10 and 12, 2011, Arroyo punched in one minute after the beginning of her shift and each time earned one-half (0.5) occurrences under the policy. (*Id.*). On May 27, 2011, Arroyo punched in five minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the policy. (*Id.*).

Arroyo began therapy for her PTSD in April 2011. Volvo allowed Arroyo to leave her shift early on Tuesday nights to attend her first set of VA therapy appointments. (Trial Tr. Vol. 3-B, pp. 439,444-447).

Arroyo took military leave from May 31, 2011 through July 8, 2011, returning on July 11, 2011. (Def. Ex. 15). Arroyo's second set of PTSD therapy appointments were on Tuesday evenings and although Arroyo punched in after 6:30 p.m. on 11 of those Tuesdays, she did not earn any occurrences under the Attendance Policy with respect to those dates. (Trial Tr. Vol. 5-A, p. 727).

**D.    Volvo Uses Progressive Discipline Under the Attendance Policy To Address Arroyo's Ongoing Violations.**

On July 29, 2011, Arroyo punched in one minute after the beginning of her shift and earned a one-half (0.5) occurrence under the policy. (Def. Ex. 15). On August 19, 2011, Arroyo punched in five minutes after the beginning of her shift and earned a one-half (0.5) occurrence under the policy; the following day, she punched in one minute after the beginning of her shift and received a one-half (0.5) occurrence under the policy. (*Id.*). On August 20, 2011, Arroyo punched in one minute after the

beginning of her shift and received a one-half (0.5) occurrence under the Attendance Policy (*Id.*).

On August 31, 2011, pursuant to the attendance policy, Schroeder presented Arroyo with CAPs in the form of a formal written warning and three-day suspension—the second and third steps in the progressive disciplinary process under the attendance policy—for earning five occurrences within the six-month period from October 19, 2010 to August 19, 2011, and for earning five occurrences within the six-month period from October 19, 2010 to August 20, 2011, respectively. (Def. Ex. 21 and 22). Per the revision in 2009 to the rolling period under the attendant policy, the time that Arroyo was out on A&S, FMLA, and Military Leave was excluded in measuring the six-month periods for these CAPs. (*Id.*). On October 10, 2011, Arroyo punched in one minute after her shift started, earning a-half (0.5) occurrence under the Attendance Policy. (Def. Ex. 15).

When Volvo provided Arroyo an accommodation of an office to use as a meditation room prior to the beginning of her shift and during breaks, Arroyo initially parked in the employee lot in the front of the Distribution Center and walked through the warehouse to the office, which was located in the rear of the Distribution Center. (Trial Tr. Vol. 2-B, pp. 234-239). On October 18, 2011, Arroyo received a memo from Schroeder reminding her of Volvo's safety shoe policy and how she would need to wear safety shoes when walking through the facility. (Def. Ex. 25).

Thereafter, Arroyo started to park in the rear of the Distribution Center immediately adjacent to the dock area. (Trial Tr. Vol. 5-A, pp.728-729). Rather than

put on her safety shoes and walk through the warehouse, Arroyo punched in early in the front of the Distribution Center, exited the building, and then drove her car to park in the rear of the Distribution Center to use the meditation room prior to the beginning of her shift. (*Id.*). Arroyo then waited until the shift start bell rang before she exited the warehouse, got back in her car, drove it around the building to park it in the front employee lot, and then reentered the warehouse and put on her safety shoes before starting her shift. (*Id.*). In taking this extra time after the shift start bell, Arroyo was in violation of the attendance policy, which required all employees to be in the building and ready to work at the scheduled start time and continue to work until the scheduled hours of work are completed. (*Id.*).

After Arroyo started her shift late on October 31, 2011, Schroeder met with her on November 1, 2011, to discuss her use of the meditation room and failure to begin working at her shift start time. (Trial Tr. Vol. 5-A, pp. 730-732). Though Arroyo violated the shift start rule on October 31, she did not receive an occurrence. (*Id.*). Rather, during the November 1 meeting, Schroeder presented a memo to Arroyo, explaining that the use of the meditation room does not negate the need for her to be prepared to begin work when the bell rings and that future violations would result in occurrences. (Def. Ex. 27). During the meeting, Schroeder also explained that Arroyo must access the meditation room by walking inside the warehouse, because parking in the rear of the Distribution Center posed safety concerns. (*Id.*). On October 24, 2011 and October 28, 2011, Schroeder sent emails to the Material Handler Supervisors reminding them that employees should only park in the employee lot and

not in the rear of the Distribution Center next to the dock area. (Def. Ex. 28). On November 2, 2011, Schroeder posted a reminder notice for all employees. (Def. Ex. 30).

### E. Ongoing Attendance Policy Violations Cause Termination of Arroyo's Employment.

After her meeting with Schroeder, Arroyo started her shift late again on November 2, 2011. (Def. Ex. 15). Accordingly, on November 3, Schroeder gave Arroyo a CAP in the form of a verbal warning for this incident. (Def. Ex. 31). The CAP also provided that Arroyo would be charged a one-half (0.5) occurrence for violation of the start rule under the attendance policy. (*Id.*).

Arroyo started her shift late again on November 4, 2011, and Schroeder presented Arroyo with a CAP in the form of a formal written warning. (De. Ex. 32). The CAP also provided that Arroyo would be charged a one-half occurrence (0.5) for violation of the start rule under the attendance policy. (*Id.*). At that point, Arroyo had incurred five occurrences within a six-month period. (Def. Ex. 15). Volvo determined that Arroyo had reached the fourth step in the progressive disciplinary process and terminated her employment. (Def. Ex. 35).

## Summary of the Argument

When this case was last before this Court, Arroyo had not yet had an opportunity to present evidence to a jury. Once she was given that chance, the mandate from this Court's remand order was fulfilled. The record before the Court on Arroyo's first appeal was based only on what a hypothetical jury could find, if Arroyo's evidence was marshalled in the manner most favorable to her. Unfortunately for

Arroyo, when she was given her opportunity to present her case to a jury, the actual evidence did not support her theory of the case. Now, after two separate jury trials and many years of intervening motion practice, Arroyo still is not satisfied that she has had a fair opportunity for her case to be heard, and she would like this Court to find that there has been a manifest error. The reality, however, is that the evidence she actually presented was simply insufficient – at the first trial it was legally insufficient because it did not include any showing of compensatory damages or being a qualified individual under the ADA and at the second trial it was insufficient because the jury did not find it persuasive and returned a verdict in Volvo's favor.

Arroyo's arguments on appeal, though difficult at times to follow, focus on three written rulings issued by Judge Dow during the years between the first jury trial and this appeal. Those rulings are: 1) the September 2019 order granting Volvo's post-trial motion for judgment as a matter of law, or in the alternative, a new trial (Doc. 227; SA96-136); 2) the August 2021 order denying Arroyo's motions for reconsideration (Doc. 300; Appellee's Supplemental SA2-4); and 3) the December 2022 order denying Arroyo's post-trial motion under Rule 59(e), seeking to vacate the September 2019 order (Doc. 351; SA138-145;). This Court reviews each of those rulings by Judge Dow for an abuse of discretion, which is a standard that Arroyo cannot meet. Importantly, Arroyo did not argue to the District Court, and does not argue on appeal, that she is seeking a new trial. Rather, she is seeking to turn back the clock and reinstate the verdict from the first trial, when the prejudice and passion

of the jury resulted in a verdict unsupported by the law and against the manifest weight of the evidence.

## Argument

### A. The Standard of Review is Abuse of Discretion.

Arroyo fails to address, anywhere in her brief, the standard of review that she believes should apply to this appeal. However, based on Arroyo's Amended Jurisdictional Statement, Arroyo is seeking review of the District Court's denial of her Rule 59 Motion and the District Court's finding that Arroyo "failed to make a showing that the District Court's order granting a new trial was manifestly erroneous either in its factual apprehension of the case or in its application of law to those facts." (Ap. Doc. 26 at 8).

Relief under Rule 59(e) is an "extraordinary remed[y] reserved for the exceptional case." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015). It is granted to correct a manifest error—factual or legal—or to consider newly discovered evidence. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). This Court reviews a denial of a motion under Rule 59(e) for abuse of discretion. *Id.* at 953. "Under the abuse of discretion standard, the proper inquiry is not how the reviewing court would have ruled if it had been considering the case in the first place, but rather whether any reasonable person could agree with the district court." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004).

### B. Arroyo Fails to Assert an Articulable Basis for Relief on Appeal.

This Court could affirm Judge Dow's rulings based on a reading of Arroyo's opening brief, alone, because it provides no legal or factual basis for relief. It should

go without saying that an appellant's brief must include an "articulable basis" for disturbing the district court's judgment. *Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir.2001). This means it must contain appellant's "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies" and that "a generalized assertion of error" will not suffice. FRAP 28(a)(8)(A); *Anderson,* 241 F.3d at 545; S*ee also Voelker v. Porsche Cars North America, Inc.,* 353 F.3d 516, 527 (7th Cir. 2003). Where a brief – even one drafted by a nonlawyer – fails to meet this burden, the appeal must fail. *Id.* This Court "cannot fill the void by crafting arguments and performing the necessary legal research." *Id.*

Here, the fundamental flaws with Arroyo's Appellant's Brief begin with her eleven separate purported issues presented for review and are then carried throughout her Argument. Arroyo does not even specify which of her arguments are applicable to which issues. Instead, the entire argument section of her brief is riddled with lengthy block quotes from cases that are not factually or procedurally similar to the instant case.

In short, Arroyo has not even come close to clearly articulating how or why Judge Dow erred or how the alleged error impacted the ruling that she is appealing. For this reason, there is no appellate claim to review, and Arroyo's appeal should be dismissed outright. *See also Townsend v. Alexian Bros. Med. Ctr.*, 589 F. App'x 338, 341 (7th Cir. 2015) (brief presented "no developed appellate claim to review" where it merely "present[ed] a rerun of [] show before the district court, along with arbitrary case citations and disconnected references to inadmissible evidence"); *Nguyen v.*

*Illinois Dept. of Central Management Services*, 2003 WL 1796008 (7th Cir. 2003) (appellate review forfeited where brief recited factual allegations of discrimination but failed to develop argument explaining why the court erred and failed to challenge basis of court's ruling); *Landfair v. J.B. Hunt Transport, Inc.*, 2008 WL 538674 (7th Cir. 2008) (holding employee not entitled to relief on appeal from judgment entered in employer's favor on claims of race and age discrimination under Title VII and Age Discrimination in Employment Act, where substance of employee's appellate brief did not challenge district court's rulings and reasoning, and he offered no basis for overturning court's judgment). Simply put, Arroyo has failed to present any arguable reasons why Judge Dow erred in rejecting her arguments. *See H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 636 (7th Cir. 2020).

If the Court is not inclined to dismiss the appeal outright, there is more than sufficient basis to affirm the rulings from Judge Dow. Due to how Appellant's Brief is organized, a complete response to every factual statement or purported argument is not feasible. It is entirely unclear in many instances what claim Arroyo is discussing or even how certain factual allegations apply to a given claim or issue presented for review. However, to the extent possible from a liberal reading of the Appellant's Brief, Volvo will attempt to address what it understands to be Arroyo's core arguments below.

### C. The District Court Did Not Abuse Its Discretion In Denying Arroyo's Rule 59 (e) Motion Where There Was No Manifest Error Or Newly Discovered Evidence.

In order to seek relief under Rule 59(e) Arroyo needed to identify a manifest error or newly discovered evidence, sufficient to require Judge Dow to vacate his

September 2019 order granting a new trial. A "manifest error" is not demonstrated by the disappointment of the losing party. It is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). As this Court has repeatedly made clear, "Rule 59 is not a vehicle for rearguing previously rejected motions." *Id.*

Not surprisingly, there is no newly discovered evidence in this case, and Arroyo has never argued otherwise. Judge Dow explained in his ruling on the 59(e) Motion: "Plaintiff does not point to any newly discovered evidence. Therefore, she must demonstrate that the Court's order granting a new trial was manifestly erroneous either in its factual apprehension of the case or in its application of law to those facts." (Doc. 351 at 6). Here, again, Arroyo completely fails to meet this requirement in her repeated attacks on Judge Dow's grant of a new trial.

From Judge Dow's initial grant of a new trial in September 2019 all the way through the last time he evaluated these issues in December 2022, Arroyo cannot point to any abuse of discretion. A careful review of Judge Dow's rulings demonstrates that there was no error for the following reasons: First, Arroyo did not introduce sufficient evidence in the first trial to establish that she was a qualified individual under the ADA. Second, the jury awarded Arroyo $2.6 million in compensatory damages even though Arroyo introduced no evidence of compensatory damages at the first trial. Third, the jury's award after the first trial was irrational and could only be a product of passion and prejudice, which prejudice impacted and therefore required a new trial on the USERRA count and, separately, was against the manifest weight

of the evidence. Fourth, once the first trial was completed, the mandate from this Court was satisfied. Arroyo has never identified any manifest error in any of these areas, much less any error that would show an abuse of discretion by Judge Dow.

### i.   Arroyo Was Not a 'Qualified Individual' Under the ADA.

Judge Dow found that Arroyo was not a qualified individual, as defined under the ADA, because, for reasons unrelated to her disability, she failed to meet Volvo's requirement that she be in the building and ready to work at her scheduled start time. (Doc. 227 at 26). A "qualified individual with a disability" is defined, in relevant part, as: "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996). The determination as to whether an individual is a "qualified individual with a disability" must be made as of the time of the employment decision. *Id.* The plaintiff bears the burden of proof on this issue; he must be able to show that he is a "qualified individual with a disability" in order to successfully prosecute an ADA claim. *Id.*

Here, the evidence from Arroyo's own testimony, demonstrated that at the time of her termination, she was not reporting to start her shift on time. "We have repeatedly held that an employee who does not come to work cannot perform the essential functions of his job." *Fogle v. Ispat Inland, Inc.*, 32 F. App'x 155, 157 (7th Cir. 2002). Just like the employee in *Fogle*, Arroyo does not dispute that she failed to report to work on time on the dates in question and she has never introduced any evidence that her inability to report to work on time was due to her disability. *Id.*

("Fogle does not dispute that he was absent from work at the times in question, but instead argues that he should be excused from Ispat's attendance policy because of his cocaine addiction. This contention is especially puzzling because, according to Fogle, none of the absences that led to his final discharge were in any way related to his addiction."). Because Arroyo does not identify any basis for finding Judge Dow's conclusion that she was not a qualified individual under the ADA erroneous, there is no basis for overturning that ruling.

Indeed, in the first appeal in this case, this Court affirmed Judge Dow's finding that Arroyo's ADA discrimination claim failed under the indirect method of proof because attendance at a job site is a basic requirement of most jobs, and the Seventh Circuit has held that an individual with erratic, unexplained absences is not a qualified individual with a disability for purposes of the ADA. (Doc. 110 at 14 n. 2) ("To the extent Arroyo also attempts to satisfy the indirect method, her claim fails, as the district court correctly concluded."). In the midst of the first trial, this Court eliminated the previous distinction between the "direct" versus "indirect" methods of proving discrimination claims, finding instead that evidence must be considered as a whole. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016).

In fact, using the post-*Ortiz* standard, where all the evidence is considered together, provides even more support for Judge Dow's finding that Arroyo is not a qualified individual under the ADA because of her admission that she was failing to report to work at her scheduled start time. *See e.g. King v. Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764–66

(7th Cir. 2016)) (applying *Ortiz*'s "evidence as a whole" standard to retaliation claims under Title VII and the Family Medical Leave Act); *Rowlands v. United Parcel Serv.– Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018) (applying *Ortiz* to a retaliation claim under the ADA); *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936–37 (7th Cir. 2022) (affirming summary judgment for employer in ADA case where employee repeatedly violated employer's PTO policy).

### ii. Arroyo Did Not Introduce Any Evidence of Compensatory Damages At First Trial.

The second reason there was no error in Judge Dow's order granting a new trial was that the jury awarded $2.6 million in compensatory, non-wage damages, even though Arroyo failed to present any evidence at trial of such damages. (Doc. 227 at 29). At the first trial, Arroyo even declined an offer from Judge Dow to allow her to re-open her case to put on evidence of emotional distress stemming from the termination decision. (Doc. 227 at 28).

A plaintiff who prevails on an intentional discrimination claim under the ADA is not automatically entitled to emotional distress or other consequential damages – such damages must be separately proven. *See* 42 U.S.C. § 1981a(a)(2) (indicating a plaintiff in ADA discrimination action "may recover" compensatory and punitive damages). Compensatory damages in this context do not include backpay or other damages related to lost wages *See* 42 U.S.C. § 1981a(b)(2). Arroyo has argued that she did introduce evidence of compensatory damages, but all such evidence predated the termination decision in November 2011, and therefore could not support a finding of damages caused by the termination of her employment. (Doc. 227 at 27-29). Arroyo

has also argued three separate times, in each of her motions to reconsider, that the jury's award could have been based on the treatment Arroyo received from Volvo while she was serving her country, but Judge Dow found that argument unpersuasive each time because such treatment goes to the question of liability, not damages stemming from the termination decision.

In the section of her Appellant's Brief that addresses, in some manner, compensatory damages under the ADA (p.30-32), Arroyo cites to and quotes extensively from multiple opinions by this Court that have no relationship to the claims in this case and do not address jury verdicts under the ADA or USERRA that were the result of passion and prejudice. *E.g. Medcom Holding Co. v. Baxter Travenol Lab'ys, Inc.*, 106 F.3d 1388 (7th Cir. 1997) (case involving the Securities Exchange Act of 1934 and common law fraud); *Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 894 (7th Cir. 1998) (a consumer protection case under the Fair Debt Collection Practices Act); *Kapelanski v. Johnson*, 390 F.3d 525, 533 (7th Cir. 2004) (case involving claims of common law fraud and breach of fiduciary duty); *Whitehead v. Bond*, 680 F.3d 919, 929 (7th Cir. 2012) (false arrest and excessive force case that affirmed the district court's rulings). None of the authority cited provides any support for finding reversible error.

### iii. Arroyo Was Not Entitled to Remittitur After First Trial.

The third reason Judge Dow was not in error to grant a new trial is because remittitur was not available following the first trial, as a matter of law. This Court has long held that "[i]f a verdict is the result of appeals to passion and prejudice, the

trial court must unconditionally order a new trial and cannot give the plaintiff an option to accept a lesser amount." *Dorin v. Equitable Life Assur. Soc. of U. S.*, 382 F.2d 73, 77 (7th Cir. 1967).

Here, the jury's award of compensatory damages without any supporting evidence could only be characterized as "monstrously excessive, born of passion and prejudice, or not rationally connected to the evidence." *Am. Nat. Bank & Tr. Co. of Chicago v. Reg'l Transp. Auth.*, 125 F.3d 420, 437 (7th Cir. 1997). The jury awarded a total of $7.8 million, comprised of $2.6 million in compensatory damages and $5.2 million in punitive damages. It is noteworthy that the only time any dollar amount was mentioned during the entire first trial was during Arroyo's counsel's closing argument, where he asked the jury to give his client $1,000,000. The fact that the jury awarded nearly eight times that amount indisputably indicates passion and prejudice. *See Dossett v. First State Bank*, 399 F.3d 940, 946 (8th Cir. 2005) (affirming district court's *sua sponte* order for a new trial where jury's verdict of $1.5 million for emotional pain, suffering and other non-economic damages in Section 1983 suit was "excessive" and "the product of passion and prejudice" by jury, where award was more than three times what plaintiff's counsel requested in his closing argument).

Though she only makes passing reference to remittitur in her Appellant's Brief (Appellant's Brief at 27 and 34), Arroyo repeatedly argued to Judge Dow that he needed to reconsider his ruling because Arroyo thought she was entitled to remittitur. Each time this argument was raised, Judge Dow pointed to considerable authority from this Court to the contrary, and Arroyo failed to provide any reason why such

authority was not controlling. (Doc. 227 at 33; Doc. 300 at 2; Doc. 351 at 8). "Unquestionably, a new trial, and not remittitur, is required when an award is the result of passion and prejudice, because the prejudice may have infected the verdict itself." *Dresser Indus., Inc., Waukesha Engine Div. v. Gradall Co.*, 965 F.2d 1442, 1448 (7th Cir. 1992). "When the question of damages, is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty granting a partial trial on the issue of damages would amount to a denial of a fair trial." *Cont'l Cas. Co. v. Howard*, 775 F.2d 876, 883 (7th Cir. 1985).

As a separate, independent reason for granting a new trial, Judge Dow found that the jury's verdict was against the manifest weight of the evidence. "A new trial is appropriate if the jury's verdict is against manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414 (7th Cir. 2015), *reh'g denied* (July 1, 2015) (internal quotation omitted). When considering whether the jury's verdict goes against the manifest weight of the evidence, the district court may weigh the evidence and analyze the "general sense of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Smith v. Rosebud Farmstand*, No. 11-CV-9147, 2017 WL 3008095, at *2 (N.D. Ill. July 14, 2017), *aff'd sub nom. Smith v. Rosebud Farm, Inc.*, 898 F.3d 747 (7th Cir. 2018) (*citing Mejia v. Cook Cnty.*, 650 F.3d 631, 633 (7th Cir. 2011)). In *Mejia*, the Seventh Circuit explained that the "manifest weight" standard is actually more lenient than, and

distinct from, the standard applied by a court in evaluating a motion for judgment as a matter of law. *Id.* at 634.

The jury's verdict in the first trial was clearly against the manifest weight of the evidence. First, as discussed above, Arroyo failed to prove that she was a qualified individual with a disability within the meaning of the ADA. Second, Volvo demonstrated (and Arroyo did not dispute) that Volvo's attendance policy uniformly chastened employees who were one, two, or a few minutes late, and that other employees had been disciplined and even terminated for similar attendance records. (Trial Tr. Vol. 6-B, pp. 1049-1059; Def. Ex. 14.) Specifically, Victor Jackson was terminated for attendance, which included an instance where he was one minute late; Jackson is neither disabled nor a veteran. *Id.* at pp. 1050-54; *see also* Def. Ex. 14, pp. 3601-02; 3659-64. Scotty Senephimmachac was also terminated based on his attendance; like Jackson, Senephimmachac was neither disabled nor a veteran. *Id.* at pp. 1054-55; *see also* Def. Ex. 14, pp. 3629-34. Sam Zweig was terminated based on his attendance. *Id.* at pp. 1056-57; *see also* Def. Ex. 14, pp. 3643-50. Again, Zweig was neither disabled nor a servicemember. *Id.* The evidence further showed other Volvo employees were given occurrences for being one or two minutes late (though their number and frequency of occurrences did not rise to the level of termination under the policy). *Id.* at pp. 1058-59. Arroyo could point to no evidence to show how the attendance policy was applied to her in a discriminatory manner based on her disability or military status.

Accordingly, Volvo established through uncontested testimony that it would have terminated Arroyo regardless of her disability or military service because she violated the attendance policy on days wholly unconnected to her military obligations or PTSD therapy appointments. In conjunction with the fact that Arroyo failed to present any evidence on key aspects of her case, this testimony makes clear that the jury's decision was against the manifest weight of the evidence. In short, not only was the jury's verdict inconsistent with the evidence, it was against the manifest weight of the evidence.

### iv. Once the First Trial Was Completed, the Mandate from This Court Was Satisfied.

The fourth reason Judge Dow's order granting a new trial was not manifestly erroneous is because after the first trial was completed, the mandate from this Court on remand had been satisfied. Arroyo spends the most significant portion of her Appellant's Brief arguing that Judge Dow somehow failed to follow the directions from this Court on remand, without ever pointing to specific rulings she is disputing, or providing any legal authority that would support such arguments. As Judge Dow himself explained in ruling on Arroyo's first two motions to reconsider, however, once the first trial was held,

> … the mandate was fully discharged. Any post-judgment challenges to the verdict were to be considered based on the evidence at trial, not the summary judgment record. And that, too, is precisely what happened. On the basis of that evidence, this Court found two separate bases for granting Defendants' motion for judgment as a matter of law. [See 227, at 21-29.] Plaintiff insists that eliminating the ADA claim on retrial will violate the Seventh Circuit's mandate. But that claim was dismissed after trial, not before it, so any argument concerning obedience to the mandate is a non-starter.

(Doc. 300 at 2). As Judge Dow further explained, because Arroyo failed to raise any new arguments or new evidence in her two motions to reconsider, there was no basis for the District Court to overturn its earlier ruling ordering a new trial. *Id.*

### D. Any Purported Errors Identified by Arroyo in the Second Trial Are Irrelevant to this Appeal.

Significantly, while Arroyo's post-trial briefing following the second trial seemed to take issue with some of the evidentiary rulings by Judge Dow during the second trial, she did not ever seek a retrial on the USERRA count. As Judge Dow explained, "[i]n light of [Arroyo's] failure to contest [Volvo's] claim that she is not seeking a new trial, the Court can only conclude that she has made a purposeful decision to eschew such relief." (Doc. 351 at 4). This is a crucial decision, because even if she was able to identify errors made during the second trial, the remedy would be a retrial: "… any mistakes that this Court may have made in conducting [the] second trial would at most justify granting a motion for a new trial, not resurrecting the verdict that this Court vacated years ago on entirely unrelated grounds." *Id.* As a result, the alleged errors from the second trial are irrelevant to this appeal. "Undeveloped arguments are waived on appeal." *United States v. Collins*, 604 F.3d 481, 487-88 n.2 (7th Cir. 2010).

Arroyo is not seeking relief based on any of the evidence that was presented or not presented at the second trial, yet inexplicably she still spends considerable pages discussing the second trial, which Volvo will address briefly here, out of an abundance of caution. When Arroyo discusses exhibits that were supposedly excluded from evidence during the second trial by Judge Dow (Appellant's Brief at 38-39), she fails

to provide any citations to the transcript from the second trial or even to the exhibit numbers for the e-mails she is referencing. However, Volvo has thoroughly searched the transcript of the second trial and notes that the most likely e-mail to which she refers now on appeal was never even proffered at the second trial: specifically, what was labeled in the pretrial memorandum as Plaintiff's Trial Exhibit 245. (Appellant's Brief at 38). Additionally, Plaintiff's Trial Exhibits 23, 24 and 25, which are e-mails addressing the travel time issue, were admitted during the second trial, so Arroyo's arguments that these e-mails were excluded by Judge Dow are simply incorrect. (Appellant's Brief at 39). Because Judge Dow never ruled that these exhibits were excluded from evidence during the second trial, this cannot support Arroyo's arguments of reversible error.

The District Court's challenged evidentiary rulings plainly were not erroneous. The weight of authority is clear that on her USERRA claim Arroyo bore the burden of demonstrating that "[her] military service, as distinct from a disability resulting from service, was a substantial or motivating factor in the employer's [challenged] decision" *Carroll v. Delaware River Port Auth.*, 89 F. Supp. 3d 628, 633 (D.N.J. 2015). *See Holmes v. Dep't of Justice*, 498 F. App'x 993, 5 (Fed. Cir. 2013) ("A PTSD injury alone is not enough to raise a cognizable discrimination claim under USERRA."); *Cazares v. City of El Centro*, Case No.: 3:20-cv-01571-BEN-RBM, at \*24 (S.D. Cal. Mar. 3, 2021) (weight of authority does not recognize a claim under the USERRA arising out of alleged discrimination or retaliation due to a plaintiff's perceived or actual disability incurred during military service rather than arising out of the

plaintiff's actual status as a current or former member of the uniformed services); *Ferrell v. Ezpawn Okla., Inc.*, No. CIV-18-607-SLP, 2019 WL 3207797, at *3 (W.D. Okla. July 16, 2019) (disability discrimination "is not within the scope of USERRA's protections"); *see also Leistiko v. Secretary of the Army,* 922 F.Supp. 66, 76 (N.D.Ohio 1996) (impairment incurred while plaintiff was on active military duty irrelevant to a claim under the VRRA); *McBride v. U.S. Postal Service,* 78 M.S.P.R. 411, 414-15 (1998) (noting that 38 U.S.C. § 4301(a)(3) mentions "service" and not injuries or disabilities arising from that service).

Here, the Court's evidentiary rulings were entirely consistent this case law and with this Court's own pretrial ruling in finding that Arroyo "need not prove that she suffers from PTSD or any disability at all to be entitled to recovery under the USERRA." (Doc. 275 at 7). The excluded evidence and testimony regarding the provided accommodations and treatment for Arroyo's PTSD disability has no probative value for the determination of whether her termination was due to her military status.

The evidence presented at the second trial showed that Arroyo repeatedly violated Volvo's attendance policy, that such violations were unrelated to her military service and that other non-military employees had been disciplined and terminated under the same attendance policy. Simply put, she did not introduce any evidence whatsoever that her military service – which had been prevalent through the entire course of her employment with Volvo – had any connection to her termination. The jury sided with Volvo after the second trial because she did not meet her burden of

proof, and Arroyo does not and cannot point to any evidentiary ruling that supports her argument that Judge Dow abused his discretion.

**Conclusion**

Arroyo's appeal fails for a number of reasons, many of which are evident from the Appellant's Brief alone. The only relief that Arroyo is seeking on appeal, and the only relief that she sought from the District Court in her Rule 59(e) Motion is reinstatement of the jury verdict from the first trial. This means that as many pages as she spends complaining about rulings that she did not like from Judge Dow leading up to and during the second trial, all of those arguments are moot, because they cannot justify the relief she is seeking. Most importantly, Arroyo does not identify any way in which Judge Dow's order granting a new trial was an abuse of discretion or was manifestly erroneous, and as a result, her request for relief under Rule 59(e) was properly denied.

Dated: October 12, 2023

/s/ William J. McMahon, IV
William J. McMahon, IV

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

William J. McMahon, IV
One West 4th Street, Suite 850
Winston-Salem, NC 27101
(336) 721-1001
bmcmahon@constangy.com

Laura A. Balson
300 S. Wacker Dr., Ste. 1050
Chicago, IL 60606
(773) 661-4708
lbalson@constangy.com

Attorneys for the Defendant-Appellee,
Volvo Group North America, LLC

## Certificate of Compliance with F.R.A.P. Rule 32(A)(7), F.R.A.P. 32(G) and Cr 32(C)

The undersigned, counsel of record for the Defendant-Appellee, Volvo Group North America, LLC, furnishes the following in compliance with F.R.A.P Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 8373 words.

Dated: October 12, 2023

/s/ William J. McMahon, IV
William J. McMahon, IV

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

William J. McMahon, IV
One West 4th Street, Suite 850
Winston-Salem, NC 27101
(336) 721-1001
bmcmahon@constangy.com

Laura A. Balson
300 S. Wacker Dr., Ste. 1050
Chicago, IL 60606
(773) 661-4708
lbalson@constangy.com

Attorneys for the Defendant-Appellee, Volvo Group North America, LLC

## Certificate of Service

I hereby certify that on October 12, 2023, the Brief of Defendant-Appellee, Volvo Group North America, LLC, was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

The following participant in the case is a registered CM/ECF user and will be served by the appellate CM/ECF system:

John P. DeRose
DeRose & Associates
615 N. York Road
Hinsdale, IL 60521
john@johnderoselaw.com

/s/ William J. McMahon, IV
William J. McMahon, IV

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

William J. McMahon, IV
One West 4th Street, Suite 850
Winston-Salem, NC 27101
(336) 721-1001
bmcmahon@constangy.com

Laura A. Balson
300 S. Wacker Dr., Ste. 1050
Chicago, IL 60606
(773) 661-4708
lbalson@constangy.com

Attorneys for the Defendant-Appellee, Volvo Group North America, LLC

## Table of Contents to Supplemental Short Appendix

Table of Contents to Supplemental Short Appendix…………………………………..…SA1

Order on Plaintiff's Motions for Reconsideration……………………………………SA2-4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LUZMARIA ARROYO          ) | |
| ) | |
| Plaintiff,       ) | |
| ) | Case No. 12-cv-6859 |
| v.             ) | |
| ) | Judge Robert M. Dow, Jr. |
| VOLVO GROUP NORTH AMERICA  ) | |
| LLC, d/b/a VOLVO PARTS NORTH   ) | |
| AMERICA,         ) | |
| ) | |
| Defendant.     ) | |

## ORDER

Plaintiff has filed two motions for reconsideration [276, 297] of the Court's post-trial rulings set out in (a) a 41-page memorandum opinion and order [227] ruling on Defendant's motion for judgment as a matter of law and a new trial and (b) two orders [260, 275] concerning the retrial of Plaintiff's USERRA claim. For the reasons stated below, both of Plaintiff's motions [276, 297] are denied. The case remains set for trial on 11/4/2021, with a final pre-trial conference to be held on 10/19/2021 at 10:00 a.m. The Court also reminds counsel that the proposed final pre-trial order, all motions in limine, and proposed jury instructions and voir dire questions are due on 9/14/2021; responses/objections are due on 9/28/2021; replies are due on 10/5/2021.

## DISCUSSION

The Seventh Circuit has long cautioned that appropriate issues for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). This is because the court's orders are "not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Geraty v. Village of Antioch*, 2015 WL 127917, at *3 (N.D. Ill. Jan. 8, 2015) (quoting *Quaker Alloy Casting Co. v. Gulfco Indus.,v Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)). Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911-12 (N.D. Ill. 2015) (quoting *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006)). Manifest errors occur "where the Court has patently misunderstood a party or has made a decision outside the adversarial issues presented to the Court by the parties or has made an error not of reasoning but of apprehension." *Bank of Waunakee*, 906 F.2d at 1191. A motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996). A party seeking reconsideration "bears a heavy burden," *Patrick*, 103 F. Supp. 3d at 912, and the decision whether to grant a motion to reconsider "is a matter squarely within the Court's discretion." *Darvosh v.*

*Lewis*, 2015 WL 5445411, at *3 (N.D. Ill. Sept. 11, 2015) (citing *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270).

As an initial matter, Plaintiff's concern that she would have risked waiver had she not filed these motions [see 297, at 1] seems a great deal overblown. Indeed, as noted below, Plaintiff has raised, and the Court has ruled on, most of the arguments in the motion at least once. Those arguments are preserved in the record.

The next focus of Plaintiff's motion—an argument that this Court rulings have somehow violated the Seventh Circuit's mandate following the prior appeal—also is misplaced. In fact, Plaintiff's own argument heading, stating that the "First Trial Proceeded According to the Mandate as Interpreted by this Honorable Court" [297, at 4], disproves her entire thesis. Under the terms of the mandate, the parties were to proceed to trial on two claims—ADA and USERRA—based on the Court of Appeals' assessment of the evidence adduced at summary judgment. And that is precisely what happened.

Once that trial was held, the mandate was fully discharged. Any post-judgment challenges to the verdict were to be considered based on the evidence at trial, not the summary judgment record. And that, too, is precisely what happened. On the basis of that evidence, this Court found two separate bases for granting Defendant's motion for judgment as a matter of law. [See 227, at 21-29.] Plaintiff insists that eliminating the ADA claim on retrial will violate the Seventh Circuit's mandate. But that claim was dismissed after trial, not before it, so any argument concerning obedience to the mandate is a non-starter. Finally, Plaintiff's motions for reconsideration do not raise any new arguments or new evidence concerning the bases on which the Court granted Defendant's motion for judgment as a matter of law—namely, that Plaintiff is not a qualified individual and that she failed to present at trial any evidence to support her claim for compensatory damages in any event.

Plaintiff also claims that the Court did not follow the proper procedures in granting a new trial without offering her the choice of accepting a remittitur. But Plaintiff fails to address at all the Court's discussion of that issue [see 227, at 33] or to grapple with the cases and treatise cited by the Court in support of its ruling that a remittitur would be inappropriate under controlling circuit law.

Plaintiff rehashes her prior arguments on the division of responsibility between judge and jury in a USERRA trial. The Court has addressed this argument in detail [see 260, at 1-3, 275, at 1-4] and stands by its rulings.

Plaintiff has added several new sections to her second motion [297] concerning damages. As the Court previously noted [see 275, at 5], it will defer any reconsideration of its prior rulings on damages issues until after the liability phase is tried to the jury. Proceeding in that manner will be more efficient for the jurors, who will not need to concern themselves with a damages calculation, and for the parties as well, as evidence on damages will not be needed in the event that the jury finds for Defendant. If the jury finds for Plaintiff, the Court can then assess whether a "fresh look" at Plaintiff's damages calculation is appropriate [see 297, at 11], including whether any additional comparators should be presented [*id*., at 11-12] and whether any expert testimony

on the subject would be both relevant to the case and reliable for the Court's consideration [*id.* at 12-15].

Dated:  August 26, 2021

Robert M. Dow, Jr.
United States District Judge