# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

LuzMaria Arroyo,

Plaintiff-Appellant,

v.

Volvo Group North America, LLC,

Defendant-Appellee.

Appeal from a Judgment of the District Court for the
Northern District of Illinois, Eastern Division
Case No. 12 C 06859
Honorable Robert M. Dow, Jr., Judge Presiding

## REPLY BRIEF OF PLAINTIFF-APPELLANT

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, IL 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com

## Oral Argument Requested

# Table of Contents

Topic                                                                                                                    Page(s)

**I.** Introduction.................................................................................................1

   A. Even after the Rehearing En Banc is denied in *Arroyo v. Volvo*,
   Volvo's lead counsel blusters the Seventh Circuit has gotten it wrong...........2

II. In Remanding *Arroyo v. Volvo*, the Seventh Circuit gives Instructions..............2

   A. The Seventh Circuit instructions are
   the law of the case and its mandate must be followed................................4

     1. The enormous net worth of Volvo is kept from the jury..........................5
     2. Plaintiff's counsel declines the invitation to reopen Arroyo's case
     to add more evidence of her compensatory damages in *Arroyo I*...............5

III.    *Arroyo I* is tried according to the instructions on remand from
   the Seventh Circuit on Arroyo's claims under both
   the USERRA and the ADA..........................................................6

   A.    Stipulations are entered between the parties in *Arroyo I*.....................6
IV. With all the evidence presented in *Arroyo I* as instructed by the Seventh
   Circuit, the Jury renders a sizable award for Arroyo...................................7

   A.    In *Arroyo I*, the jury is properly instructed on punitive damages.........7

     1. The punitive damages were meant to punish Volvo's behavior and deter
     future behavior by Volvo and others................................................8

     2. The actions of its highest-ranking management and supervisors justifies
     punitive damages against Volvo....................................................8

       a. Deliberate indifference to Arroyo's federally protected rights justifies
       punitive damages against Volvo...................................................9

     3. By its verdict, the *Arroyo I* jury speaks conclusively on both the ADA and
     the USERRA.........................................................................9

       a. The assessment of damages is always reserved for the jury and that
       duty is properly undertaken by the jury in *Arroyo I*........................10

     4. The damages award in *Arroyo I* is permissible in a ratio of 2 to 1......10

V. Volvo and its attorneys have only themselves to blame for the jury verdict.......11

VI. Volvo forfeits caps on the ADA and the *Arroyo I* jury tries the issue……..….…..12

    A. Back Pay, front pay, other employment-related benefits, prejudgment interest and liquidated damages require judge determination……………..…13

VII. Without any facts to support his conclusion, the trial judge determines the jury verdict is the product of passion and prejudice against Volvo……………13

    A. The trial judge abuses his discretion and vacates the *Arroyo I* jury award…13

    B. Before *Arroyo II*, the trial judge abuses his discretion and decides the mandate from the Seventh Circuit is satisfied and is "a non-starter"………..14

    C. The trial judge abuses his discretion and fails to offer Arroyo an opportunity to accept a remittitur before ordering a new trial………………..14

    D. Disregarding the ruling by the Seventh Circuit, the trial judge again asserts Arroyo is not a 'Qualified Individual' under the ADA…………15

    E. Forgetting other important evidence, the trial judge uses the wrong standard insisting that holding employees to a strict start time is within its discretion…………………………………………………..……15

VIII. The trial judge ignores the law of the case, the mandate given, and the clear instructions from the Seventh Circuit……………………………15

    A. At the *Arroyo II* Pretrial Hearing, the trial judge eliminates the stipulations to which the parties freely agreed………………………….15

IX. Well before the trial of *Arroyo II*, the trial judge continues to insist that he alone, and not the jury will determine damages under USERRA……………16

    A. Before *Arroyo II*, plaintiff's counsel argued that all damages nuder ADA and USERRA should be determined by the jury…………………16

    B. Before *Arroyo II*, the trial judge considers eliminating any evidence from Arroyo's psychiatrist, Dr. Lynn or her Licensed Clinical Social Worker, Brian Fask or from Dr. Stan Smith, her economics expert on damages…….17

X. The trial judge refuses Arroyo's ADA claim or mention of PTSD in *Arroyo II*.….17

A. Before *Arroyo II*, the trial judge determines that
Arroyo's PTSD diagnosis is irrelevant ……………………………,,,,,,,,,,,,,,,,,,,,,,,,,,,,17

B. Before *Arroyo II*, the trial judge bars emails
sent during Arroyo's hospitalization……………………………………………………18

C. Instead, the trial judge requires the parties to disguise, rename, and
mischaracterize rehabilitative events and locations so that
no mention of Arroyo's PTSD is discussed before the *Arroyo II* jury…………19

XI. During *Arroyo II*, the trial judge separates evidence
in violation of the *Ortiz* standard……………………………………………….……19

A. The reason for Arroyo's firing may be important, but the trial judge rules
anti-discrimination under the ADA "out of the case"……………………..………20

B. The trial judge says maybe the Seventh Circuit will just
reinstate the verdict so Arroyo gets her ADA claim……………………..………21

C. During *Arroyo II*, the trial judge does not follow the post-*Ortiz* standard
that all the evidence in the case should be considered together as a whole…21

1. The trial judge refuses to allow the jury to consider the impact of
Arroyo's PTSD on her ability to attend and be punctual to work……………21

D. During *Arroyo II*, the trial judge bars mention of the ADA claim
and evidence clearly authorized by the Seventh Circuit…………………………22

1. The trial judge bars the email from Arroyo to Regina Williams
suggesting that Arroyo is experiencing discrimination………………………23

E. After the trial of *Arroyo II*, the trial judge erroneously misinterprets
Arroyo's Rule 59 Motion to Reconsider and reinstate *Arroyo I*……………..…24

XII. Conclusion……………………………………………………………………………24

# TABLE OF AUTHORITIES

**Cases Cited**                                                           **Page(s)**

*Adams v. City of Chicago*, 798 F.3d 539, 542 (7th Cir. 2015)................................5

*Arroyo v. Volvo Group North America, LLC*, 805 F.3d 278, 285-7
(7th Cir. 2015)..........................................................................................3, 4, 5

*Bradley v. Village of University Park, Illinois*, 59 F.4th 88 7, 896 (7th Cir. 2023).....4

*Bruso v. United Airlines, Incorporated*, 239 F.3d 848, 860 (7th Cir. 2001)..............9

*Creek v Village of Westhaven*, 144 F.3d 441, 445, (7th Cir.1998)..........................4

*Eastern Trading Co. v. Refco, Inc.,* 229 F.3d 617, 622 (7th Cir.2000)...................11

*Galvan v. Norberg,* 678 F.3d 581, 588 (7th Cir.2012).........................................12

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)..........................9

*Jastremski v. United States*, 737 F.2d 666, 670 (7th Cir.1984)............................11

*Kapelanski v. Johnson*, 390 F.3d 525, 530, (7th Cir. 2004).................................13

*Kolstad v. American Dental Association*, 119 S.Ct. 2118, 2124-6, (1999)................8

*Kossman v. Northeast Ill. Reg. Commuter R.R. Corp.*, 211 F.3d 1031, 1037
(7th Cir.2000)....................................................................................................11

*Medcom Holding Co. v. Baxter Travenol Laboratories Inc.*,
106 F.3d 1388, 1392 (7th Cir.1997)....................................................................10

*Mejia v. Cook County*, 650 F.3d 631, 633-4 (7th Cir. 2011)................................15

*Pacific Mutual Life Insurance Company v. Haslip*, 111 S.Ct. 1032, 1044
(1991)................................................................................................................8

*Pals v Schepel Buick & GMC Truck, Inc.,* 220 F.3d 495, 500 (7th Cir.2000)...........12

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097,
147 L.Ed.2d 105 (2000)......................................................................................11

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513,
155 L.Ed.2d 585 (2003)......................................................................................10

*Staub v. Proctor Hosp.*, 560 F.3d 647, 658 (7th Cir.2009)……………………………….9

*Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020)………………………………………4

*Tate v. Executive Mgmt. Servs., Inc.*, 546 F.3d 528, 531 (7th Cir.2008)……………12

*TXO Production Corp. v. Alliance Resources Corp.*, 113 S.Ct. 2711, 2722-3, (1993)………………………………………………………………………………………………8

*Whitehead v. Bond*, 680 F.3d 919, 925 (7th Cir. 2012)…………………………………12

<u>**Statutes-Regulations Cited**</u>                                      <u>**Page(s)**</u>

USERRA, §4311 (c)…………………………………………………………………………18

Rule 32(c) of the Seventh Circuit Rules of Appellate Procedure………………………25

# I.  Introduction

LuzMaria Arroyo, the only Active Army Reservist employed by Volvo Group North America, LLC seeks the protection of USERRA as she follows military orders in defense of our country. The emails uncovered during discovery and the evidence adduced during the trial of *Arroyo I* reveal the frustration and actions taken by the highest-ranking Volvo officials as they recklessly ignore and intentionally violate Arroyo's rights and Volvo's obligations under USERRA. Upon returning from her third deployment in Operation Iraqi Freedom and coming back to Volvo, Arroyo is diagnosed to be suffering from PTSD, a disability recognized under the ADA. As fully shown to the *Arroyo I* jury, Arroyo experiences discrimination, mockery, and abuse from Volvo's highest-ranking management and supervisors and HR partners as she struggles with her disability and seeks treatment for her PTSD.

In setting aside the jury verdict and substantial award in *Arroyo I*, the trial judge refuses to offer Arroyo a remittitur and orders a new trial on the USERRA claim only and dismisses her ADA claim outright.

In *Arroyo II*, the trial judge disregards the instructions from the Seventh Circuit on remand and the law of the case doctrine as he bars from the jury any evidence or mention of Arroyo's PTSD and her disability discrimination under the ADA. In *Arroyo II*, by eliminating from jury consideration so many emails determined to be critical by the Seventh Circuit and disguising so much evidence deemed relevant, the trial judge deprives Arroyo of a fair trial.

Contrary to the assertions of Defendant-Appellant, The Statement of the Case at the beginning of its Brief, particularly the "Procedural History"[1] and the "Key Facts"[2] amply demonstrate why the jury verdict in *Arroyo I* must be reinstated. Noticeably, Arroyo's return from her third deployment in Iraq and diagnosis of PTSD in 2011 coincides with Volvo's documentation of Arroyo's violations of the Local Attendance Policy by being late for work often for as little as 1 to 3 minutes.[3] The evidence shows Arroyo clocks into Volvo's facility as much as an hour early to use the meditation room.

### A. Even after the Rehearing En Banc is denied in *Arroyo v. Volvo*, Volvo's lead counsel blusters the Seventh Circuit has gotten it wrong

*Arroyo I* is tried as directed by the trial Judge as he interprets the directions from the Seventh Circuit on remand. Even after rehearing en banc is denied, Volvo's lead counsel expresses overconfidence that the Seventh Circuit got it wrong. Respectfully, only the trial judge, Volvo, and its counsel fail to perceive how all these facts fit together as the Seventh Circuit and the jury in *Arroyo I* did. Plaintiff's counsel challenges Volvo's lead counsel to appear before the Seventh Circuit and defend his position that they got it wrong.

### II. In Remanding *Arroyo v. Volvo*, The Seventh Circuit Gives Clear Instructions

Taking all the evidence as a whole, a reasonable jury could infer that Volvo was motivated, at least in part, by anti-military animus toward Arroyo. There is evidence that from the beginning of her employment, her supervisors disliked the burden her frequent military

---

[1] Defendant-Appellee's Brief, pp. 2 through 6.
[2] Defendant-Appellee's Brief, pp. 6 through 13.
[3] Defendant-Appellee's Brief, pp. 8 and 9.

leave placed on the company. They repeatedly discussed disciplining her and denied her rights, such as travel time, to which she was entitled. Some of the emails come close to a direct admission of management's frustration. For example, Schroeder discussed his "dilemma" of "disciplin[ing] a person for taking too much time off for military reserve duty." He later reportedly told Arroyo that accommodating her orders placed an undue hardship on Volvo; Jarvis repeated the same sentiment. Temko complained about Arroyo's lack of communication while she was deployed in Iraq. A jury could understandably detect in these communications animus toward Arroyo's military service.

Animus or frustration alone, however, does not support a claim of discrimination. It must have been linked, as a motivating factor, to an adverse employment action.

Again, we think a jury could reasonably conclude that there was such a link here. The emails expressing management's frustration often transitioned directly to a discussion about disciplining Arroyo under the local attendance policy for her tardiness and absences. In the end, she was not disciplined directly for her military leave. But she was disciplined for other instances of tardiness, often of a relatively minor nature – one or only a few minutes late A jury could infer from the evidence that Arroyo's punishment for such infractions was actually motivated by her supervisors' long-standing frustration about her frequent absences. (Internal citations omitted).[4]

[W]e think the evidence is sufficient to convince a reasonable jury that Arroyo was the victim of disability discrimination. Internal emails indicate that Volvo management considered disciplining Arroyo for her absences while she was in the hospital in December 2010, even though she emailed Schroeder to tell him about her condition. Another one of her supervisors, Sherrie Jankowski, joked about Arroyo's absence, writing that she heard rumors Arroyo was actually vacationing in Hawaii. A few weeks earlier, Jankowski had complained to Schroeder that Arroyo was "really becoming a pain with all this." This is enough for a jury to find discriminatory motive.

There is also enough to support a finding of "but for" causation. Management's expressions of frustration about Arroyo's military absences goes back to the beginning of her employment in 2005, but it was not until she returned from her second deployment in the fall of

---

[4] *Arroyo v. Volvo Group North America, LLC*, 805 F.3d 278, 285-6 (7th Cir.2015).

2010 that Volvo began implementing the series of disciplinary steps that led to her termination. That timing coincides with the onset and diagnosis of Arroyo's PTSD. This kind of suspicious timing can support an inference of discrimination.[5]

When presented with all the emails and testimony during *Arroyo I*, the jury resoundingly finds for Arroyo on ADA discrimination and intentional violation of USERRA. The jury for Arroyo must be reinstated.

## B. The Seventh Circuit instructions are the law of the case and its mandate must be followed

In *Creek v Village of Westhaven*, 144 F.3d 441, 445, (7th Cir.1998), the Seventh Circuit made clear, "The law of the case doctrine is a rule of practice, based on sound policy [and recites] that, when an issue is once litigated and decided, that should be the end of the matter.... The most elementary application of this doctrine is that when a court of appeals has reversed a final judgment and remanded the case, the district court is required to comply with the express or implied rulings of the appellate court".

Most recently, in *Bradley v. Village of University Park, Illinois*, 59 F.4th 887, 896 (7th Cir. 2023), after reminding that it reviews de novo the scope of a prior remand, including the application of the mandate rule and the law of the case doctrine, the Seventh Circuit concluded that on the second remand it would "attempt to leave no room for doubt about the scope of this remand". *Id.*, at 905.

*Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020), holds, "For the law of the case doctrine to come into play, the court must have first determined the particular

---

[5] *Arroyo v. Volvo Group North America, LLC*, 805 F.3d 278, 287 (7th Cir. 2015),

issue, as an actual decision of an issue is required to establish the law of the case".
Of course, in *Arroyo v. Volvo*, the Seventh Circuit ruled that the jury must be
allowed to review all emails in the case and to decide the issue of Volvo's liability
under both the USERRA and the ADA.

In *Adams v. City of Chicago*, 798 F.3d 539, 542 (7th Cir. 2015), the Seventh
Circuit held "the district judge committed two errors: first, … the judge's procedure
was wrong; and second, … the judge abused his discretion in concluding that the
damages were so excessive that a remittitur was proper…. [T]he remedy here is not
a remand to re-run the remittitur procedure. We agree [ ] that the district court
abused its discretion by modifying the jury's verdicts [ ]. We therefore [vacate] the
district court's judgments [ ] and [remand] with instructions to reinstate the jury's
verdict."

### 3. The enormous net worth of Volvo is kept from the jury

As ordered by the trial judge, the net worth of Volvo, a financial behemoth of
enormous wealth and influence around the world is never mentioned before the
*Arroyo I* jury. However, Volvo Group's Report on the Third Quarter 2016 shows that
"Volvo Braces for $500 Million Fine in EU Cartel Probe" and brags that already
"Volvo Puts Aside $275 Million More for EU Fine." (See Doc. #: 204).

### 4. Plaintiff's counsel declines the invitation to reopen Arroyo's case to add more evidence of her compensatory damages in *Arroyo I*

Plaintiff's counsel were satisfied that the stipulations entered between the
parties, evidence of Arroyo's PTSD, its effects on her, her attempts to deal with it,
the insensitive reaction of Volvo management and supervisors to her PTSD, their

attempts to discipline her, and her efforts to educate others concerning PTSD was more than sufficient on the issue of emotional damages.

Contrary to the Defendant--Appellee's assertions[6], not only were plaintiff's counsel satisfied they had sufficient evidence in the record to argue to the jury, but also by its verdict in *Arroyo I*, the jurors indicated they had heard enough.

The evidence the jurors hear during *Arroyo I* from Temko, Schroeder, and Arroyo concerning the job desirability and rate of pay and benefits at Volvo is sufficient on the issue of lost income and benefits on economic damages, and Volvo behavior and Arroyo's suffering on emotional damages. The damage caused by Volvo, a financial behemoth and the injuries sustained by Arroyo is understood by the Arroyo I jury.

### III. *Arroyo I* is tried according to the instructions on remand from the Seventh Circuit on Arroyo's claims under both the USERRA and the ADA

Before and during *Arroyo I*, the trial judge and counsel for both parties read the opinion of the Seventh Circuit several times. The trial judge comments on the record that he is following the instructions from the Seventh Circuit on remand as best as possible while also being fair to both sides.

### B. Stipulations are entered between the parties in *Arroyo I*

The parties enter a stipulation regarding Arroyo's PTSD including, but not limited to, after being exposed to a traumatic event, such as warfare, a plaintiff may experience symptoms including mental or physical distress.  PTSD was officially

---

[6] Defendant--Appellee's Brief, p. 4.

recognized by the American Psychiatric Association in 1980 in the third edition of the Diagnostic and Statistical Manual of Mental Disorders. PTSD is a disability under the ADA. The trial judge extols "the cooperation of the parties in reaching the stipulations on plaintiff's PTSD" as a tremendous savings of time and effort and avoidance of confusion before the jury. (Doc.: #135).

Further, the trial judge suggests the parties enter a second stipulation setting forth the dates of Arroyo's two latest deployments while in the employ of Volvo to avoid confusion of the jury. (Doc.: #151).

The *Arroyo I* jury finds those agreed stipulations among the parties to be persuasive by its verdict.

### IV. With all the evidence presented in *Arroyo I* as instructed by the Seventh Circuit, the Jury renders a sizable award for Arroyo

In *Arroyo I*, the jury enters a verdict in favor of Arroyo and awards her $2.6 million in compensatory damages and $5.2 million in punitive damage. (162).[7]

#### A. In *Arroyo I*, the jury is properly instructed on punitive damages

The trial judge properly instructs the jury that punitive damages can be awarded against Volvo to teach a lesson and be sure it never occurs again and/or if Volvo employees have intentionally, willfully, and egregiously violated Arroyo's rights while recklessly ignoring a federal statute.

---

[7] Although no reference of it can be found in the record, the trial judge had a practice welcome by all trial attorneys where the court would come down from the bench after the court reporter was no longer recording the proceedings and, during such an occasion after the Final Pretrial Conference for *Arroyo I*, stated, "It will be easy for me to determine punitive damages under USERRA. I will just double any compensatory damages the jury finds under the ADA".

### 1. The punitive damages were meant to punish Volvo's behavior
### and deter future behavior by Volvo and others

Just as was done in *Arroyo I*, the Supreme Court and the Seventh Circuit have long approved a jury assessment of punitive damages to punish Volvo's behavior and deter future bad behavior by Volvo and others.

In *Pacific Mutual Life Insurance Company v. Haslip*, 111 S.Ct. 1032, 1044 (1991) the United States Supreme Court approved the punitive damages assessed by the jury against an insurance company because its agent defrauded its insured. The award did not violate the due process clause of the 14th Amendment as the instructions to the jury clearly explained punitive damages were meant to punish the insurance company and protect the public by deterring the defendant and others from doing such wrong in the future.

In *TXO Production Corp. v. Alliance Resources Corp.*, 113 S.Ct. 2711, 2722-3, (1993), the United States Supreme Court determined that the jury was properly instructed and based upon the evidence heard, it could reasonably award substantial punitive damages against the employer.

### 2. The actions of its highest-ranking management and supervisors
### justifies punitive damages against Volvo

In *Kolstad v. American Dental Association*, 119 S.Ct. 2118, 2124-6, (1999) the United States Supreme Court approved an award of punitive damages when an employer's high-ranking management and supervisors engaged in intentional discrimination and acted "with malice or with reckless indifference to the federally protected rights" of the employee.

Before *Arroyo I*, the trial judge strongly suggests plaintiff's counsel refrain from reading the proposed deposition designations concerning "Plaintiff's harassment complaint against Keith Schroeder; (b) Schroeder's alleged conduct towards Plaintiff after receiving her complaint; (c) Plaintiff's complaint to Dennis Sholl about Schroeder; (d) any alleged failure to investigate Plaintiff's complaint against Schroeder". (Doc.#: 135). Before *Arroyo I*, the trial judge refuses plaintiff's request to read to the jury excerpts from the depositions of VP Denis Scholl, Volvo's second highest ranking officer in the United States and HR partner Regina Williams. (Doc.#: 144).

### a. Deliberate indifference to Arroyo's federally protected rights justifies punitive damages against Volvo

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) held a plaintiff must show that an official with authority to institute corrective measures was deliberately indifferent to the discrimination.

*Bruso v. United Airlines, Incorporated*, 239 F.3d 848, 860 (7th Cir.2001), held whether an employer was recklessly indifferent to its employee's federally protected rights, and subject to punitive damages is for a reasonable jury to determine in light of evidence it heard at trial.

### 3. By its verdict, the *Arroyo I* jury speaks conclusively on both the ADA and the USERRA

In *Staub v. Proctor Hosp.*, 560 F.3d 647, 658 (7th Cir.2009), the Seventh Circuit noted to set aside the jury verdict, "the standard is steep. A verdict will be

set aside as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict."

### a. The assessment of damages is always reserved for the jury and that duty is properly undertaken by the jury in *Arroyo I*

In *Medcom Holding Co. v. Baxter Travenol Laboratories Inc.*, 106 F.3d 1388, 1392 (7th Cir. 1997), the Seventh Circuit noted that the trial judge orders retrial three times as he reverses the jury award of damages each time. The evidence at the first trial was sufficient to sustain jury's verdict on liability and compensatory damages. *Id.,* at 1394. Plaintiff does not waive the right to have jury decide damages. Nothing in the record showed that plaintiff had abandoned the right to the first jury verdict. *Id.,* at 1396. The ascertainment and assessment of damages is a question of fact for the jury; although the amount may not be speculative, it need not be proved with mathematical certainty. *Id.,* at 1398. We emphasize that the calculation and assessment of damages is a question of fact that is reserved for the jury. *Id.,* 1401. Evidence, taken in the light most favorable to the plaintiff, is sufficient to satisfy the standard for punitive damages. If it is, then the jury determines punitive damages. *Id.,* at 1402.

### 4. The damages award in *Arroyo I* is permissible in a ratio of 2 to 1

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), the United States Supreme Court noted that "[s]ingle digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1." *Id.,* at 534.

### V. Volvo and its attorneys have only themselves to blame for the jury verdict

At no time during the trial or in its deliberations did the jury demonstrate any confusion about the facts, the instructions, or its duties and responsibilities in the case. Defendant and its attorneys, having agreed to a general verdict form in *Arroyo I*, have only themselves to blame for forfeiting any caps on the ADA.

In *Eastern Trading Co. v. Refco, Inc.,* 229 F.3d 617, 622 (7th Cir.2000), the Seventh Circuit cautioned that a party "has only itself to blame for its inability to demonstrate that the jury was confused by the instruction" where party did not request special interrogatory and party claiming instruction was submitted to the jury on theory for which there was no evidentiary support".

In *Jastremski v. United States*, 737 F.2d 666, 670 (7th Cir.1984), the Seventh Circuit held, "The failure to divide the lump sum award into discrete elements of recovery does not warrant reversal."

In *Kossman v. Northeast Ill. Reg. Commuter R.R. Corp.*, 211 F.3d 1031, 1037 (7th Cir.2000), the Seventh Circuit noted that defendant did not object or specify its request for a special verdict form. And when a jury only returns a general verdict, we need only find support in the record for one of the theories presented to the jury in order to affirm the jury award.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court held that when ruling on a motion for judgment as a matter of law following a jury verdict, courts do not re-weigh the evidence presented at trial or make credibility determinations.

In *Tate v. Executive Mgmt. Servs., Inc.*, 546 F.3d 528, 531 (7th Cir.2008), the Seventh Circuit stated, "Once a jury has spoken, we are obliged to construe the facts in favor of the parties who prevailed under the verdict."

In *Galvan v. Norberg,* 678 F.3d 581, 588 (7th Cir. 2012), the Seventh Circuit reversed the case stating, "The district court's power to grant a new trial on weight grounds is not unlimited: a certain deference to the jury's conclusions is appropriate. The district court also has less freedom to overturn a jury verdict in cases involving issues that are easily understood by laypeople." (Internal citations).

In *Whitehead v. Bond*, 680 F.3d 919, 925 (7th Cir. 2012), the Seventh Circuit taught, "In cases involving simple issues but highly disputed facts (an apt description of this case), greater deference should be afforded the jury's verdict. The district court, however, cannot grant a new trial just because it believes the jury got it wrong. [S]ince the credibility of witnesses is peculiarly for the jury, it is an invasion of the jury's province to grant a new trial merely because the evidence was sharply in conflict. Even when evidence is contradictory, [i]t's the jury's job—not the district court's job or the job of a panel of appellate judges—to figure out who's telling the truth." (Internal citations). *Id.*, at 928.

### VI. Volvo forfeits caps on the ADA and the *Arroyo I* jury tries the issue

As occurs in *Arroyo I*, the Seventh Circuit determined in *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 500 (2000), that defendant's lawyer has himself to blame because only a general verdict form was submitted to the jury and thus any caps on the ADA are forfeited and the issue is triable by the jury.

### A. Back Pay, front pay, other employment-related benefits, prejudgment interest and liquidated damages require judge determination

On July 13, 2017, the trial judge enters an order awarding Arroyo equitable damages of $141,388.51 in back pay, $84,131.92 in front pay, $41,348.61 in other employment-related compensation, $8,546.10 in prejudgment interest, and $275,415.16 in liquidated damages. (Doc.: #176).

### VII. Without any facts to support his conclusion, the trial judge determines the jury verdict is the product of passion and prejudice against Volvo

At no time during the trial or in its deliberations did the *Arroyo I* jury demonstrate any passion or prejudice against Volvo, nor did the trial judge or the parties ever suggest it. Without any facts to support his conclusion, the trial judge determines that the jury verdict on the USERRA claim only in *Arroyo I* was the product of passion and prejudice against Volvo. In *Kapelanski v. Johnson*, 390 F.3d 525, 530, (7th Cir. 2004), the Seventh Circuit made it clear, "We will not set aside a jury verdict if a reasonable basis exists in the record to support the verdict, viewing the evidence in the light most favorable to the prevailing party, and leaving issues of credibility and weight of evidence to the jury."[8]

### A. The trial judge abuses his discretion and vacates the *Arroyo I* jury award

Unfortunately, the trial judge usurps the jury's duty and right to decide compensatory and punitive damages. The trial judge ignores all the evidence the jury heard during *Arroyo I* showing Volvo's highest management, supervisors, and HR partners intentionally violate Arroyo's rights under USERRA over the years of

---

[8] Doc.: # 227, pp. 15 to 17.

her employment and, upon her return from her third deployment at Operation Iraqi Freedom, discriminate against her as she is diagnosed suffering with a disability under the ADA. The trial judge imposes the caps of the ADA, ignoring the evidence showing Volvo's intentional discrimination of Arroyo suffering from the disability of PTSD and Volvo's intentional violation of USERRA and overturns the punitive damage award. (See Docs.: #176 and #177).

On September 30, 2019, the trial judge enters judgment as a matter of law in favor of Volvo on Arroyo's ADA discrimination claim and granted a new trial on plaintiff's USERRA claim only. Arroyo's requests for relief are denied in their entirety. (Doc.: # 227).

### B. Before *Arroyo II*, the trial judge abuses his discretion and decides the mandate from the Seventh Circuit is satisfied and is "a non-starter"

The trial judge determines that he has satisfied the mandate of the Seventh Circuit and longer must allow the jury in *Arroyo II* to consider evidence Volvo discriminated against Arroyo because she suffers from PTSD.

> "Plaintiff insists that eliminating the ADA claim on retrial will violate the Seventh Circuit's mandate. But that claim was dismissed after trial, not before it, so any argument concerning obedience to the mandate is a non-starter." (Doc. 300 at 2).

### C. The trial judge abuses his discretion and fails to offer Arroyo an opportunity to accept a remittitur before ordering a new trial

As a matter of fact, on July 13, 2017, the trial judge set aside the jury verdict and ordered a new trial without ever offering Arroyo the opportunity to accept a remittitur. (Doc.: #177).

### D. Disregarding the ruling by the Seventh Circuit, the trial judge again asserts Arroyo is not a 'Qualified Individual' under the ADA

Although the Seventh Circuit said it was not the end of the analysis, the trial judge continues to assert that Arroyo was not a qualified individual, as defined under the ADA, because, for reasons unrelated to her disability, she failed to meet Volvo's requirement that she be in the building and ready to work at her scheduled start time. (Doc. 227).

### E. Forgetting other important evidence, the trial judge uses the wrong andard insisting that holding employees to a strict start time is within its discretion

The trial court's use of the wrong standard in *Arroyo II* requires remand at least. See *Mejia v. Cook County*, 650 F.3d 631, 633-4 (7th Cir. 2011), holding, "Put simply, if the evidence was admitted before the jury, the district court is usually stuck with it in ruling on a motion for a new trial, for better or worse…Because our review of the standard of law applied in a motion for a new trial is plenary, the use of the wrong standard would normally make a remand appropriate."

## VIII. The trial judge ignores the law of the case, the mandate given, and the clear instructions from the Seventh Circuit

### A. At the *Arroyo II* Pretrial Hearing, the trial judge eliminates the stipulations to which the parties freely agreed

MR. DEROSE: The case law is clear that stipulations made by the parties –

THE COURT: But it's a different trial, Mr. DeRose. That's the problem with the stipulation. There was a good reason, a really good reason for them to stipulate the last time because the ADA has a disability element. And PTSD is the disability. That claim is gone. It's a very different calculus to this pretrial as to whether they should agree to that stipulation. The case law would not allow me to force a stipulation on them in a different case.

This case-- this trial does not have an ADA claim.

MR. DEROSE: And Judge, I don't disagree with that because I am contending that PTSD and its effect on Ms. Arroyo explains their actions and her actions.

THE COURT: I hear you on that one, Mr. DeRose. All I'm saying is I am not going to force a stipulation on them from the last trial because the last trial had two claims and one of them PTSD was clearly relevant, and, in fact, related to an element of the claim.[9]

## IX. Well before the trial of *Arroyo II,* the trial judge continues to insist that he alone, and not the jury will determine damages under USERRA

After acknowledging that he never saw a jury verdict on a USERRA case and

"[i]t would be news to me", the trial judge invites plaintiff's counsel to search for

and provide other jury verdicts.[10]  The next day plaintiff's counsel provides the trial

judge with 11 jury verdicts across the country awarding plaintiffs damages for the

employer's USERRA violations.[11]

THE COURT: Either Volvo terminated Ms. Arroyo with animus based on her military service, in which case she wins; or Volvo terminated Ms. Arroyo because she violated company policies that have nothing to do with military animus, in which case the defendant wins. That's the whole case. That's what's left. There's no ADA claim left. There may be an appeal on an ADA claim.  But there's no -- the claim is a USERRA claim. And USERRA, liability to jury, damages to judge".[12]

### A. Before *Arroyo II,* plaintiff's counsel argued that all damages under ADA and USERRA should be determined by the jury

MR. DEROSE: And, Judge, where I was wrong in the last trial, it is not the Court's determination of liquidated damages.  We are entitled to a jury trial on that.  And there are -- I gave you a lot of the case law -

---

[9] Transcript of Proceedings, January 14, 2022, pp. 42: 18 to 43:11.
[10]  Transcript of Proceedings, March 10, 2020, pp. 11:15 to 12:7, 12:18 to 13:8.
[11]  See Doc.: # 258.
[12] Transcript of Proceedings, March 10, 2020, p. 7:14-21.

- I have it. The courts have agreed, and several judges in our own district have said, liquidated damages has now given us the right to a jury trial, and this should be a jury question.[13]

B. **Before *Arroyo II,* the trial judge considers eliminating any evidence from Arroyo's psychiatrist, Dr. Lynn or her Licensed Clinical Social Worker, Brian Fask or from Dr. Stan Smith, her economics expert on damages**

MR. DEROSE: Well, Judge, first of all, we do believe that the one-hour-and-two-minute deposition, and the one-hour-and-eight-minute deposition that we redacted should be played to the jury because Dr. Lynn and Brian Fask, the counselor, give all of the information from their records about how Ms. Arroyo was being impacted, and how it was impacting her PTSD by the way the employer was treating her in the workplace throughout.[14]

## X. The trial judge refuses Arroyo's ADA claim or mention of PTSD in *Arroyo II*

Disregarding the instructions from the Seventh Circuit, the trial judge bars from evidence all emails and documents discussing or referring to Arroyo's PTSD, her efforts at rehabilitation, and any frustration Volvo and its management express and demonstrate when Arroyo seeks rehabilitation, and any effect Arroyo's PTSD had on behavior of the parties in the case.

### A. Before *Arroyo II,* the trial judge determines that Arroyo's PTSD diagnosis is irrelevant

THE COURT: There is one major issue in the motions in limine that I see, and that's the PTSD. that seems to be the major issue.[15]

So everything up to that PTSD is irrelevant.

MR. DEROSE: But that last year is what -- when they finally decide we've had enough, we're going to terminate her. That explains why she

---

[13] Transcript of Proceedings, March 10, 2020, pp. 14:21 to 15:3.
[14] Transcript of Proceedings, March 10, 2020, pp. 9:1 to 12:9.
[15] Transcript of Proceedings-Final Pretrial Hearing, January 14, 2022, p.39:9-10.

is saying, "Are you making this log just for me? Why are you watching me so closely? Why are you worried that I'm one minute late?"

Judge, it explains so much more about her cantankerousness in their opinion for how they were dealing with her. "Why can't you just do what we want." Well, she
thought she was in a stressful situation. That's going to be our argument.

THE COURT: Your argument may be right that it is relevant and not overly prejudicial to allow the jury to know that she had PTSD. But belaboring the point is never going to happen in this trial and I will sustain objections to the extent that any attempt to turn this back into an ADA claim is going to be shut off at the pass.[16]

## B. Before *Arroyo II,* the trial judge bars emails sent during Arroyo's hospitalization

At the Final Pretrial Hearing, the trial judge considers emails during the four day period of Arroyo's hospitalization from December 19 through December 23. The emails are among Arroyo, Schroeder, Jankowski, and Col. Gorski of ESGR and make no mention of PTSD. More importantly, the Seventh Circuit makes direct reference to these emails in its remand order.[17]

MS. DEROSE: Your Honor, I just wanted to draw your attention to section 4311 (c) though, where it says, "if an individual's past, present, or future connection with a service is a motivating factor in an employer's adverse employment action against that individual, the employer has committed a violation."

So arguably anything concerning PTSD still falls under USERRA, and the PTSD is connected to her service and was a motivating factor in their adverse employment action.[18]

---

[16] Transcript of Proceedings-Final Pretrial Hearing, January 14, 2022, pp.41-11 to 42:12.
[17] Transcript of Proceedings-Final Pretrial Hearing, January 15, 2022, pp. 3:9 to 10: 23
[18] Transcript of Proceedings-Final Pretrial Hearing, January 15, 2022, p. 10:11-19.

### C. Instead, the trial judge requires the parties to disguise, rename, and mischaracterize rehabilitative events and locations so that no mention of Arroyo's PTSD is discussed before the *Arroyo II* jury

1. Volvo's requirement that Arroyo transfer from Fort Benning, Georgia to a local reserve unit located in Darien, Illinois disguised as nothing to do with the demands from Volvo management to satisfy Volvo's business needs.

2. Volvo's requirement that Arroyo transfer locally mischaracterizes the separation from her "war buddies" and acceleration of her deployment for a third time to Iraq.

3. The meditation room is mischaracterized as a meeting room where everyone could meet in the morning before work.

4. The group therapy sessions are renamed as meetings that all soldiers had to attend.

### XI. During *Arroyo II*, the trial judge separates evidence in violation of the *Ortiz* standard

Contrary to the *Ortiz* standard, the trial judge separates evidence supporting the USERRA claim from the ADA claim, leaving a large gap in evidence between her PTSD diagnosis and termination. The barred evidence occurring right up to the date of termination was so critical in showing Volvo's mounting frustration with Arroyo and reveals its true motive looking for an out and reason to finally terminate her.

THE COURT: And, Mr. DeRose you've been telling me for about eight years or six years that I need to read the Seventh Circuit opinion very

carefully. And I have done that repeatedly. And I spent extra time with it last weekend.[19]

You can see in my opinion, I think verbatim what the Seventh Circuit said, here is the evidence that is in support of a USERRA claim, and here's the evidence that is in support of an ADA discrimination claim.

And the potential for jury confusion and prejudice, frankly, it is pretty strong in this case.[20]

Well, the Seventh Circuit told me very clearly that the frustration with Ms. Arroyo started in 2005, so it is going to be relevant. So those exhibits are going to come in.

On the other hand, there are lots of documents in that 69 pages exhibit that go to disability accommodation, a whole bunch of things that are no longer in the case. Those aren't coming in.[21]

### A. The reason for Arroyo's firing may be important, but the trial judge rules anti-discrimination under the ADA "out of the case"

The firing. As the Seventh Circuit said, maybe she got fired because of attendance violations. Or maybe she got fired because Volvo had enough of her, and all those led to 2005 and this all related to the anti-military animus. The jury is going to have to sort that out.

But I have to keep clear for this case and the jury only has to award a recovery for a USERRA violation. The jury cannot properly in this case at this time give an award for disability discrimination. And that's the line I'm going to draw. And I'm going to be strict about it, as best I can, because I don't-- I think that's what the Seventh Circuit has told me to do.[22]

And the answer is, I read your opinion from 2005-- 2015. I adhered to it as carefully as I could. I sorted out the case law and the statute as best I can. The line I drew is anti-military animus evidence comes in. Anti-discrimination animus is out.

---

[19] Transcript of Proceedings, January 21, 2022, p. 4:17-20.
[20] Transcript of Proceedings, January 21, 2022, p. 5:8-14.
[21] Transcript of Proceedings, January 21, 2022, p. 7:13-19.
[22] Transcript of Proceedings, January 21, 2022, p. 9:3-14.

If I should have let you go forward on the ADA claim, they'll tell me another day, but they're not going to tell me today. So that is where I am.[23]

## B. The trial judge says maybe the Seventh Circuit will just reinstate the verdict so Arroyo gets her ADA claim

But I am doing the best I can with this, I promise you. And I am trying to be fair to both sides here. I do not want the Seventh Circuit to tell me that I am wrong again and you try this case again, which is why am trying very hard to draw the cleanest possible lines I can for you guys. This is not a disability discrimination case, and I cannot let you turn it into one. Unless the Seventh Circuit tells me I was wrong on the ADA claim, in which case maybe they will just reinstate the verdict so you will not have to try this again. But that is the only way this is going to be an ADA case again.[24]

## C. During *Arroyo II*, the trial judge does not follow the post-*Ortiz* standard that all the evidence in the case should be considered together as a whole

### 1. The trial judge refuses to allow the jury to consider the impact of Arroyo's PTSD on her ability to attend and be punctual to work

1. Arroyo, while presenting "My Story" before other returning soldiers at a Blue Ribbon Event, begins to realize that she is physically and emotionally injured and suffering upon her return from her last deployment.

2. With her background in HR while serving in the Army, Arroyo tries to educate Temko, Jankowski, Schroeder, and other Volvo employees of the rights of the Active Army Reservist and the obligations of Volvo.

3. Jankowski emails Schroeder mocking Arroyo for becoming "a real pain with all this" law to read and reporting that the rumors are that "Arroyo  is on vacation in Hawaii".

---

[23] Transcript of Proceedings, January 21, 2022, p. 10:3-10.
[24] Transcript of Proceedings, January 21, 2022, p. 16:13-22.

4. Earlier, Arroyo emails Schroeder explaining why she self-admitted to the emergency room at the hospital on Christmas Eve.

5. Arroyo's email recounts "the stress at work" manifesting the physical effect on her health.

6. The testimony of Dr. Lynn and Brian Fask confirming Arroyo suffering is barred.

7. Schroeder emails VP Scholl and his HR partners that he plans to discipline Arroyo for her absence from work while she is in the hospital.

8. The Independent Physical Examination (IME) conducted by Volvo's own selected medical advisor confirms the diagnosis that Arroyo is suffering from PTSD.

9. Volvo's decision-makers testify repeatedly that Arroyo was not terminated for production issues, or disrespect to or insubordination of management personnel, but only because of violation of Local Attendance Policy.

### D. During *Arroyo II*, the trial judge bars mention of the ADA claim and evidence clearly authorized by the Seventh Circuit

The trial judge eliminates mention and/or discussion of Arroyo's suffering from PTSD in *Arroyo II*. Finding her complaint is "disability-based", the trial judge prohibits the emails among Arroyo, VP Sholl, and Schroeder from *Arroyo II*.[25] The trial judge makes it very clear, "We're still going to be on USERRA before there's ever been any even whiff of PTSD in this case."[26]

---

[25] Transcript of Proceedings, January 28, 2022, pp. 295:1 to 297:24; 300:12 to 303:1.
[26] Transcript of Proceedings, January 28, 2022, pp. 302: 25 to 303:1.

Although the Seventh Circuit directly references the email where Jankowski advises Schroeder that there are rumors swirling that Arroyo is vacationing in Hawaii, the trial judge bars it from evidence as unnecessary because the ADA claim is out of *Arroyo II*.

> THE COURT: These are all rumors about something about -- even if this were true, it would be about her hospitalization and her PTSD, so this one is going to be out. It's a waste of time for the jury.[27]

### 1. The trial judge bars the email from Arroyo to Regina Williams suggesting that Arroyo is experiencing discrimination

> MS. DEROSE: She's just talking about how -- she is being vocal about the fact that she is being discriminated against. At this point she doesn't know why they're discriminating against her. She doesn't know their motive, but she feels like they're being unfair and discriminating against her for some reason.
>
> MR. DEROSE: And she says, Judge, maybe I've been --I've been being discriminated against all along. It is all just dawning on her.
> …
>
> THE COURT: Okay. Well, she can testify to that, but I'm going to exclude this exhibit. This exhibit is her own rumor that she is being discriminated against.[28]

The trial judge eliminates from *Arroyo II* the emails and evidence discussing the frustration and inconvenience Volvo's highest management and HR personnel claim from the commencement of Arroyo's employment in 2005. Arroyo is the only Active Army Reservist in Volvo throughout the United States. Those emails discuss how Arroyo's answer to her military orders is interfering with Volvo's ability to run its business. Importantly, elimination of the emails and evidence is violative of the

---

[27] Transcript of Proceedings, January 28, 2022, pp. 311:8 to 312: 14.
[28] Transcript of Proceedings, January 28, 2022, pp. 313:7 to 314:6.

Seventh Circuit instructions on remand and the law of the case and denies Arroyo a fair trial.

### E. After the trial of *Arroyo II*, the trial judge erroneously misinterprets Arroyo's Rule 59 Motion to Reconsider and reinstate *Arroyo I*

The trial judge cavalierly concludes: "In light of [Arroyo's] failure to contest [Volvo's] claim that she is not seeking a new trial, the Court can only conclude that she has made a purposeful decision to eschew such relief." (Doc. 351 at 4). Nothing could be farther from the truth since Arroyo's Rule 59 posttrial motion is clearly entitled "Plaintiff's Rule 59 Motion for New Trial or To Alter or Amend Judgment".

Throughout Arroyo's Rule 59 motion, plaintiff's counsel details the trial court's failure to follow the directions and instructions from the Seventh Circuit during *Arroyo II*, depriving plaintiff of a fair trial. In the posttrial motion, Arroyo's counsel argues that the verdict in *Arroyo I* should be reinstated, was not against the clear weight of the evidence, and was in "an acceptable 2:1 ratio between compensatory and punitive damages for the wrong committed by Volvo". At the end of the Rule 59 motion, Arroyo moves the trial judge to set aside the jury verdict entered in *Arroyo II* on February 3, 2022 (Doc.#: 342) and reinstate the jury verdict entered in *Arroyo I* on August 23, 2016. (Doc.#: 162).

## XII. Conclusion

Because of abuse of discretion with the trial judge's refusal to follow the mandate and instructions of the Seventh Circuit Court of Appeals, *Arroyo II* must be set aside and *Arroyo I* must be reinstated.

Respectfully submitted,                          Respectfully submitted,

/s/ John P. DeRose                                /s/ Caitlyn F. DeRose
John P. DeRose                                    Caitlyn F. DeRose

## CIRCUIT RULE 30(d) STATEMENT

In accordance with Circuit Rule 30(d) of the Rules of the Seventh Circuit Court of Appeals, I certify that the foregoing brief contains all the materials required by parts (a) and (b) of this Rule.

/s/John P. DeRose
John P. DeRose
Attorney for LuzMaria Arroyo,
Plaintiff–Appellant

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 28.1(e)(1)-(3) and Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I certify that the foregoing brief complies with the type volume limitation and is proportionately spaced as required by Rule 32(b) of the Circuit Rules. The brief exclusive of tables and cover page contains 6,992 words as recorded by the word count of the word-processing system used to prepare the brief.

/s/John P. DeRose
John P. DeRose
Attorney for LuzMaria Arroyo,
Plaintiff–Appellant

John P. DeRose & Associates
615 N. York Road
Hinsdale, IL 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com

**CERTIFICATE OF SERVICE**

To: Mr. William J. McMahon IV      Ms. Laura Balson
    Constangy, Brooks, Smith & Prophete, LLP    Constangy, Brooks, Smith & Prophete, LLP
    100 N. Cherry Street      300 S. Wacker Drive
    Suite 300      Suite 1950
    Winston-Salem, North Carolina 27101    Chicago, Illinois 60606
    bmcmahon@constangy.com      lbalson@constangy.com

       On November 2, 2023, Plaintiff-Appellant's Reply Brief was filed electronically using the Court's electronic filing system from which the above listed Attorneys of Record will be served by receiving a copy.

                   Respectfully submitted,

                   /s/ John P. DeRose
                   John P. DeRose

John P. DeRose
Caitlyn F. DeRose
John P DeRose & Associates
615 N. York Road
Hinsdale, Illinois 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com
caitlyn@johnderoselaw.com